[Filed Nov. 10, 1886.]

## JOHN B. DAVID *v.* PORTLAND WATER COMMITTEE ET AL.

CONSTITUTIONAL LAW — AMENDMENT OF STATUTE — MUNICIPAL CORPORATIONS—CONTRACTS OF—OFFICERS AND AGENTS OF—OATH OF OFFICE—JUDICIAL NOTICE.—A law passed by the legislative assembly at its special session in 1885, was entitled " An act to amend an act entitled ' An act to incorporate the City of Portland,' approved October 24, 1882." Immediately after the enacting clause, and as introductory to the body of this act, it provided that "the act entitled " as above " be and the same is hereby amended, by adding thereto the following sections, numbered from 142 to 167 inclusive, to be numbered as Chapter XIII of said act, and be entitled ' Water Works,' " after which followed sections numbered from 142 to 167, conferring on the City of Portland, power to purchase or construct and maintain water works therein. The powers conferred were to be exercised through certain persons named in the act, who are styled " The Water Committee," and who have authority for the purposes of the act, to issue bonds of the city to the amount of $700,000, which were to be " signed by its chairman, and countersigned by its clerk." Said committee was authorized, as soon as such water works were completed and ready for use, to select from their own number five persons for maintaining and conducting such works, to be styled "The Water Commission," to serve in the first instance for the several terms of two, four, six, eight and ten years ; thereafter such commissioners to be appointed by the Governor,

Points decided.

and to hold for the term of ten years. A section of the city charter of Portland in force when the aforesaid act was passed, provided that the city "is not bound by any contract, nor in any way liable thereon, unless the same is authorized by a city ordinance, and made in writing and by order of the council, signed by the auditor or some other person in behalf of the city." Under these provisions, *Held :*

1. That the last named section is not amended by the provisions of the act in question, as said act provided only for a class of contracts which the city previously had no power to make.

2. The act is not a revision or amendment of the city charter, but rather supplementary thereto, and the title sufficiently discloses its object and purposes. It is not necessary that the title specify the object of the act in all its particulars. It is sufficient if the subject be stated generally.

3. The persons who constitute "The Water Committee" are not "elected or appointed to an office under the constitution," within the meaning of Sec. 3, Art. 15 thereof, requiring such persons to take an oath of office. They are no more than agents of the city, required by the act to carry out its provisions. But even if officers, it seems the act need not prescribe an oath of office, as the provision of the constitution upon that subject is one that executes itself.

4. The persons constituting the Water Commission provided for by said act are not " officers," within the meaning of Sec. 2, Art. 15 of the constitution, providing that " the legislative assembly shall not create any office the term of which shall be longer than four years." For like reasons the constitutional provisions (Secs. 6 and 7, Art. 6) do not apply to said commissioners.

5. The power of the legislature over municipal corporations, in the absence of constitutional restrictions, is unlimited, except so far as they are invested with rights incident to a private corporation. Public parks, the supply of gas, water and sewerage in towns and cities, may ordinarily be classed as private objects; but they often become matters of public importance, and whether they are the one or the other is a fact which may be decided by the legislature. And in considering an act to supply the City of Portland with water, the court may take judicial notice of the fact, that said city is the metropolis of the state, having important commercial and business relations with all its citizens; and that the entire community have therefore a direct interest in the city's welfare.

Constitutional Law—Legislative Power.—The legislature of this state is invested with legislative power to the fullest extent, except so far as limited expressly or by necessary implication in the constitution of the the state, and subject to the restrictions of the constitution of the United States. In considering the constitutionality of an act of the legislature, therefore, the question is not as to the extent of the power that has been delegated by the people to the legislative assembly, but as to the extent of the limitations they have imposed upon that body.

Multnomah County. Defendants appeal. Reversed, and complaint dismissed.

*George H. Williams, C. E. S. Wood,* and *A. H. Tanner,* for Appellants.

Before proceeding to annul by judicial sentence what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption. (*People* v. *Supervisors, &c.,* 17 N. Y. 241 ; *Newland* v. *Marsh,* 19 Ill. 376 ; *Fletcher* v. *Peck,* 6 Cranch, 82 ; *Cline* v. *Greenwood,* 10 Or. 241.) So in inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden. Plenary power in the legislature for all purposes of civil government, is the rule. A prohibition to exercise a particular power is an exception. (*People* v. *Draper,* 15 N. Y. 532 ; *Thorpe* v. *R. & B. R. R. Co.,* 27 Vt. 140 ; *Cresap* v. *Gray,* 10 Or. 349.) Under Sec. 7, Art. 15, of the constitution, city officers may be " appointed," if such be the will of the legislature. They need not be elected. There is no limitation upon the power of the legislature in this respect. (*People* v. *Pinckney et al.,* 32 N. Y. 377 ; *People* v. *Batchelor,* 22 N. Y. 128 ; *Barnes* v. *District of Columbia,* 91 U. S. 545 ; *People* v. *Bennett,* 54 Barb. 480. See also *Sturges* v. *Spofford,* 52 Barbour, 436 ; *Mayor of Baltimore* v. *Board of Police,* 15 Md. 376 ; *Police Commissioner* v. *Louisville,* 3 Bush. 597 ; *Diamond* v. *Cain,* 21 La. An. 309 ; *State* v. *Leong,* 3 La. An. 538.) The objection that the act in question proposes to create a debt upon the city of Portland, and tax the people of the city for its payment without their consent, rests upon an assumption that may or may not be true. Sections 160 and 161 provide for water rates sufficient to pay expenses, costs, and interest upon the bonds to be issued, and also for a sinking fund for the ultimate redemption and payment of said bonds. No provision is made in said act for taxation. No tax has been threatened—none assessed—none levied, and plaintiffs as tax-payers have no standing in court. (*People* v. *Canal Board,* 55 N. Y. 390.) But we maintain that the legislature may impose a tax upon the citizens of a municipality for public purposes, without submitting the question to the votes of such citizens, and without any other consent on their part except what may be implied from their representation in the legislature. (*Darling*

v. *Mayor*, 31 N. Y. 134; *Dunmore's Appeal*, 52 Pa. St. 374.) The doctrine of *Board of Park Commissioners* v. *Com. Council of Detroit*, 28 Mich. 228, has not generally been recognized as law outside of Michigan, and in several instances has been expressly disapproved. (*People* v. *Tweed*, 63 N. Y. 207.) Upon the general doctrine we cite *Otoe Co.* v. *Baldwin*, 111 U. S. 15; *Quincy* v. *Cooke*, 107 U. S. 549; *Kelly* v. *Pittsburg*, 104 U. S. 81; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514. If the legislature could invest the municipal authorities of Portland with the powers created by the act in question, it could invest fifteen of the most prominent and responsible citizens of Portland with the same powers. (*People* v. *Flagg*, 46 N. Y. 401; *Philadelphia* v. *Field*, 58 Pa. St. 320; *Guilford* v. *Board of Supervisors*, 13 N. Y. 143; *Thomas* v. *Leland*, 24 Wend. 65; *Norwich* v. *County Commissioners*, 13 Pick. 60; *Hagar* v. *Board of Supervisors*, 47 Cal. 222; *R. R. Co.* v. *Otoe*, 16 Wallace, 667; *Weister* v. *Hade*, 52 Penn. St. 474; *Sharpless* v. *Mayor*, 21 Penn. St. 147; *Dunmore's Appeal*, 52 Penn. St. 374; *Hingham and Quincy Bridge Co.* v. *Norfolk*, 6 Allen, 353; *Salem Turnpike and Bridge Co.* v. *Essex*, 100 Mass. 282; *Carter* v. *Cambridge Co.*, 104 Mass. 236; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; *People* v. *Mayor*, 4 N. Y. 419; *Blanding* v. *Burr*, 13 Cal. 343; *Lycoming* v. *Union*, 15 Penn. St. 166; *Goodrich* v. *Turnpike Co.*, 26 Md. 119; *Boyd* v. *Chambers*, 78 Ky. 140; *Stuart* v. *Supervisors*, 30 Iowa, 9; *Shelby R. R. Co.* v. *R. R. Co.*, 5 Bush, 225; *People* v. *Harper*, 91 Illinois, 357; *People* v. *Shepard*, 36 N. Y. 285; *San Francisco* v. *Canavan*, 42 Cal. 557.) The objection that the members of the committee and of the commission are not required to take an oath of office is untenable. Assuming their appointment to be otherwise legal, and that they are officers, this objection goes to the point that they are not officers *de jure ;* the complaint shows that they are officers *de facto*, and their right to hold the office cannot be attacked collaterally: (*Cole* v. *Black River Falls*, 57 Wis. 113; *Foot* v. *Stiles*, 57 N. Y. 399; *Cronin* v. *Stoddard*, 97 N. Y. 271.) But these persons are not state officers, but commissioners

of the city of Portland, and are as much the agents or committeemen of the city, and their obligations are the same as though they had been appointed by the mayor and common council of the city, and their duties prescribed by the city ordinance. (*Bailey* v. *Mayor*, 2 Denio, 431 ; *Barnes* v. *District of Columbia*, 91 U. S. 540; *People* v. *Pinckney*, 32 N. Y. 377.) The phrase " every person elected or appointed to any office under the constitution," does not extend to municipal officers. (*Barton* v. *Kalloch*, 56 Cal. 95 ; *People* v. *Provines*, 34 Cal. 520 ; *People* v. *Henry*, 62 Cal. 557.) These cases also answer the objection that the tenure of office of the commissioners is longer than is permitted by Sec. 4, Art. 15, of the constitution. But admitting there might be doubt upon the point, the objection is not available now. No commissioners have been appointed, nor are likely to be for a long time to come. It will be time enough to ask for an injunction when they are appointed, or threaten to carry out the provisions of the act. (*Gordon* v. *Carnes*, 47 N. Y. 617 ; *People* v. *Mahaney*, 13 Mich. 499.) Should it be claimed that the anticipated tax under the act in question would be violative of Sec. 18 of article 1 of the constitution, which provides that private property shall not be taken for public use, we answer that it is well settled that this clause of the constitution refers to the right of eminent domain, and not to the right of taxation. (*Sharpless* v. *Mayor*, 21 Penn. St. 147 ; *People* v. *Mayor*, 4 N. Y. 119 ; *Gilman* v. *City of Sheboygan*, 2 Black 510; *Kelly* v. *Pittsburg*, 104 U. S. 78.)

*James K. Kelly* and *Richard Williams*, for the Respondents.

" Of the right of resident tax payers to invoke the interposition of a court of equity to prevent the illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, there is at this day no serious question." (*Crampton* v. *Zabriski*, 101 U. S. 609 ; *Newmeyer* v. *R. R. Co.*, 52 Mo. 81 ; *Merrill*

v. *Plainfield*, 45 N. H. 126 ; *New London* v. *Brainard*, 22 Conn. 552 ; *The Liberty Bell*, 23 Fed. Rep. 845 ; Dillon Mun. Corp., Secs. 731, 732, 917, 918 ; 1 Pomeroy Eq., Sec. 260.) We maintain that the members of the water committee are not agents, but officers. An office is " an employment on behalf of the government, in any station of public trust, not merely transient, occasional, or incidental. In the matter of oaths to be taken by attorneys, 20 Johns. 493 ; *Underwood* v. *Mc-Duffie*, 15 Mich. 367 ; *The People* v. *Hurlbut*, 24 Mich. 62, 63. See, also, *United States* v. *Hartwell*, 6 Wall. 393.

The act revised and sections amended are not set forth and published at full length, as required by article 4, Sec. 22, of constitution. (*Doland* v. *Barnard*, 5 Or. 390; see also *City of Portland* v. *Stark*, 2 Or. 69.) Nor does the act under consideration come within the exceptions to the rule, as recognized by the Supreme Court in *Bird* v. *Wasco Co.*, 3 Or. 282 ; *Fleischner* v. *Chadwick*, 5 Or. 152, and *Grant County* v. *Sels*, 5 Or. 243. In all these cases, the statutes in question were independent acts, and did not profess to revise or amend any prior acts on the same subject, although they did so by implication ; while the act under consideration, in its title, professes to amend the act " entitled an act to incorporate the city of Portland." The subject of the act is not expressed in the title. (Article 4, Sec. 20, Const. of Oregon ; *Simpson* v. *Bailey*, 3 Or. 516; *O. & W. T. I. Co.* v. *Rathbun*, 5 Sawy. 32 ; *Rader* v. *Township of Union*, 39 N. J. L. 509 ; *Dorsey's App.*, 72 Pa. St. 192.) The legislature has no authority either to elect or appoint officers, to administer the affairs of a municipal corporation which are of a purely local character, in which the state has no interest. It can only *prescribe* the officers to be elected, and the manner in which they are to be chosen. (1 Bl. Com. 45; *People* v. *Hurlbut*, 24 Mich. 14 ; *People* v. *Allison*, 55 N. Y. 50; Cooley's Const. Lim. 230.) Municipal corporations are said to have a two-fold character, as being on the one hand agencies of the state government, and on the other, corporations endowed with capacities and permitted to hold property, and enjoy peculiar privileges for

the benefit of their corporators exclusively. (Dill. Mun. Cor., Sec. 71; *Atkins* v. *Randolf*, 31 Vt. 226 ; *State* v. *Tappan*, 29 Wis. 664; *Philadelphia* v. *Field*, 58 Pa. St. 320 ; *Louisville* v. *University*, 15 B. Mon. 642 ; *Society* v. *Philadelphia*, 31 Pa. St. 175 ; *People* v. *Salmon*, 51 Ill. 37 ; *People* v. *County*, 55 Ill. 33; *Railroad Co.* v. *City of Sparta*, 77 Ill. 505 ; Cooley's Taxation, 688; *Merriwether* v. *Garrett*, 102 U. S. 472.) This two-fold nature of municipal corporations has often been commented upon, and made the ground of important decisions. (See *Bailey* v. *New York*, 3 Hill, 531 ; *Milhan* v. *Sharp*, 15 Barb. 193 ; *Grogan* v. *San Francisco*, 18 Cal. 612 ; *Storrs* v. *Utica*, 17 N. Y. 104 ; *People* v. *Batchelder*, 53 N. Y. 128 ; *Western Savings Fund* v. *Philadelphia*, 31 Pa. St. 175 ; *City of Dubuque* v. *The Illinois C. R. Co.*, 39 Iowa, 56, 63.) That the legislature has no power against the will of a municipal corporation to compel it to contract debts for local purposes, in which the State has no concern. (Cooley Const. Lim., Sec. 285; *People* v. *Common Council of Detroit*, 28 Mich. 240 ; *People ex rel.* v. *Mayor, etc.*, 51 Ill. 31; *Hanson* v. *Vernon*, 27 Iowa, 58 ; *State ex rel.* v. *Tappan*, 29 Wis. 664.) And it has frequently been held that the construction of gas works, water works, and the like, is of a private or local character, and is in no sense of a public nature. (*Bailey* v. *Mayor, etc.*, 3 Hill, 531 ; *Western S. F. S.* v. *City of Philadelphia*, 31 Pa. St. 185, 189 ; Cooley on Taxation, 688 2d ed.; 1 Dill. on Mun. Cor., Sec. 58 ; 12 Ohio St. 375.) Nor can the legislature compel the authorities of a municipal corporation to enter into a contract to make local improvements, or to purchase lands, any more than coerce a private corporation or an individual to do so. (*People ex rel. R. R. Co.* v. *Batchelder*, 53 N. Y. 140; *Atkins* v. *Town of Randolph*, 31 Vt. 226 ; *Bailey* v. *Mayor, etc., N. Y.*, 3 Hill, 531 ; 1 Desty on Taxation, 272.)

THAYER, J.—The respondents commenced a suit in the circuit court for Multnomah County, to restrain said "Water Committee" from constructing certain water works, and from issuing and disposing of certain bonds, under and in pursuance

of an act of the legislative assembly of the State of Oregon en-
titled "An act to amend an act entitled 'An act to incor-
porate the city of Portland, approved October 24, 1882,'"
approved November 25, 1885, claiming that said act was un-
constitutional and void, and that the issuing and disposing of
said bonds as the obligations of the city of Portland, would
render the real and personal property of the respondents, and
all other tax payers in said city, liable to pay a large amount
of additional taxation for the interest on said bonds, and to pay
the principal thereof when the said bonds became due and pay-
able, according to the tenor thereof; and that respondents
would be subject to a multiplicity of actions to recover the
taxes so wrongfully to be assessed and collected from them, to
pay the interest and principal of the bonds. It is alleged in
the complaint in the suit that the respondents are residents of
the city of Portland, and owners of a large amount of real estate
and personal property situated in said city, and are tax pay-
ers therein. The acts of the appellants, the Water Company,
complained of are, in effect, that they are proceeding to carry
out the provisions of the said act. The appellants interposed
a demurrer to the complaint, upon the ground that the facts
therein alleged did not constitute a cause of suit. The circuit
court overruled the demurrer, and the decree appealed from
was thereupon entered. The mayor and the common council
of the city are named defendants also, and the ground upon
which the suit is sought to be maintained is, that the resident
tax payers have a right to invoke the interposition of a court
of equity to prevent an illegal creation of a debt which they,
in common with the other property holders of the city, might
otherwise be compelled to pay.

The validity of said act is questioned upon several grounds.
It is claimed that the act and sections amended are not set forth
and published at full length, as required by article 4, section
22 of the state constitution, which decrees that "no act shall
ever be revised or amended by mere reference to its title; but
the act revised or section amended shall be set forth and pub-
lished at full length"; and that the members of the water
committee are officers of the city, and are not required by the

act to take an oath of office. The heading of the act, after the title, is as follows : " Be it enacted by the legislative assembly of the State of Oregon : that the act entitled ' An act to incorporate the city of Portland ' approved October 24, 1882, be and the same is hereby amended by adding thereto the following sections, numbered from 142 to 167, inclusive of both, which sections shall constitute and be numbered as chapter 13 of said act, and entitled ' Water Works.,' " Sections 142 and 143 read as follows :

" SEC. 142. The city of Portland, hereinafter referred to as ' the city,' is authorized and empowered to construct or purchase, keep, conduct, and maintain water works therein, of a character and capacity sufficient to furnish the city, and the inhabitants thereof, with an abundance of good, pure and wholesome water, for all uses and purposes necessary for the comfort, convenience and well-being of the same; and to that end may acquire, by purchase or otherwise, and own and possess, such real and personal property, within and without the limits of the city, as in the judgment of the persons herein authorized to construct, purchase, conduct, and maintain the same, may be deemed necessary and convenient ; and for such purpose may also issue bonds, and dispose of the same, as hereinbefore provided.

" SEC. 143. The power and authority given the city by Sec. 142 hereof, to construct or purchase water works, and issue and dispose of bonds thereof, shall be exercised as hereinafter provided by the following named substantial tax payers and *bona fide* residents thereof, namely : John Gates, F. C. Smith, C. H. Lewis, Henry Failing, W. S. Ladd, Frank Dekum, L. Fleischner, H. W. Corbett, W. K. Smith, J. Loewenberg, S. G. Reed, R. B. Knapp, L. Therkelsen, Thomas M. Richardson, and A. H. Johnson, who shall be styled collectively ' The Water Committee,' and are hereinafter mentioned and referred to as ' the committee.' "

These two sections signify the general power conferred, and designate the persons who are to exercise it, and the name they should collectively be styled. Sections 153 and 154 of the act are as follows :

" SEC. 153.  For the purpose of carrying this act into effect, the committee is authorized to issue and dispose of the bonds of the city, of the denomination of from $100 to $1,000, as the purchaser may desire, with interest coupons attached thereto, the par value of which shall not exceed the sum of $700,000, signed by its chairman, and countersigned by its clerk; whereby the city shall be held and considered in substance and effect to undertake and promise, in consideration of the premises, to pay to the bearer of each of the said bonds, at the expiration of thirty years from the date thereof, the sum named therein, in gold coin of the United States, together with interest thereon in like coin at the rate of five *per centum*, payable half yearly as provided in said coupons.

" SEC. 154.  Whenever and as soon as the water works herein provided for are, in the judgment of the committee, ready for use, there shall be selected as herein provided five persons, for the purpose of maintaining and constructing said water works, who shall be styled individually 'water commissioners,' and collectively, ' the water commission,' and are hereinafter referred to as the ' commissioners ' and the ' commission ' respectively; and thereafter the power and authority hereafter given to the city to keep, conduct, and maintain water works therein, shall be exercised as hereinafter provided, by said commission."

These latter sections indicate the mode the power is to be exercised, and the extent of the duty of the committee.  The respondents claimed that the commissioners referred to in the last section are officers, and that—as their tenure of office, as provided in section 155 of the act, which reads as follows :

" SEC. 155.  The commissioners shall be selected in the first instance by the committee from their own number, for the several terms of two, four, six, eight, and ten years ; but in case a sufficient number thereof do not consent to serve as such commissioners, the remainder may be selected from the resident tax payers of the city, and thereafter the commissioners shall be appointed by the governor of the state, from such tax payers, as follows: In case of a vacancy arising otherwise

than from the expiration of a term, for the remainder of the term ; but in case of the expiration of a term, for the full term of ten years next thereafter,"—is more than four years, it is violative of section 2 of article 15 of the constitution, the last paragraph of which section provides that " the legislative assembly shall not create any office, the tenure of which shall be longer than four years."

Another ground upon which the respondents assail the validity of the act is, that the legislative assembly had no authority under the constitution to appoint the water committee, or authorize that committee to elect the water commissioners ; that it is a violation of sections 6 and 7 of article 6 of the constitution, which read as follows: " SEC. 6.   There shall be elected in each county, by the qualified electors thereof, at the time of holding general elections, a county clerk, treasurer, sheriff, coroner and surveyor, who shall severally hold their offices for the term of two years.

" SEC. 7.   Such other county, township, precinct and city officers as may be necessary, shall be elected or appointed in such a manner as may be prescribed by law."

They also contend that the subject of the act is not expressed in the title, as required by section 20 of article 4 of the constitution, which provides as follows :

" Every act shall embrace but one subject and matters properly connected therewith, which subjects shall be expressed in the title.   But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The main ground of objection to the act is, that the water committee has no authority to construct the water works for the city, and compel it to pay for the same, without the consent of the people through the corporate authorities ; that the legislature had no power to compel the authorities of the city to enter into a contract to make the improvement, or to authorize the committee to issue the bonds in its name, and make it liable for their payment.

These several objections against the validity of the act have been presented to the court with much force and ability, and if any of them are found to be tenable, it will be our duty to pronounce it void, however meritorious the enterprise may be which it was intended to promote. The constitution of a state is paramount to any act which the legislative assembly may pass. It is the voice of the people speaking in their original condition, and binds the legislative assembly as well as private persons. It declares to that body that its enactments must be in accordance with certain restrictions, which its members have no more power to transcend than has the humblest person within the jurisdiction of the state. It is a limitation upon legislative power, and however formal a measure may be enacted by the legislative assembly, if it contravenes any of the provisions of that instrument, it will no more have the force of law than would a resolution adopted by a voluntary assembly of private individuals. When the people established the state government, they prescribed in the outset the mode in which legislative power should be exercised, and especially limited it in many particulars; and every enactment not in conformity with that mode, or which transcends such limit, is a nullity.

The duty of administering the law devolves upon the courts, and they must of necessity decide what the law is as applicable to the particular case before them. Hence, they must determine whether a legislative act, granting a right or conferring an authority which is sought to be enforced or exercised, is valid or not. If the constitutional requirements have been observed in its adoption, and it is found to be in conformity with its provisions, it is a law; otherwise, it grants no right, nor confers any authority. But whether it is constitutional or not, must depend upon the express provisions of that instrument, or necessary implication arising therefrom; and courts should not adjudge it unconstitutional unless it is clearly repugnant to those provisions. The people of this state possessed originally all legislative power, subject to the restrictions contained in the constitution of the United States, and they have

invested the legislative assembly with that power to the fullest extent, except so far as they expressly inhibited its exercise, as before suggested. The question in such cases is not as to the extent of power that has been delegated by the people to the legislative assembly, but as to the limitations they have imposed upon that body. It therefore becomes essential, in determining the various objections that have been made against the validity of the act in question, to consider whether or not it conflicts with the provisions of the constitution before referred to.

The argument presented by the respondents' counsel in support of their objection, " that the act revised or sections amended were not set forth and published at full length," is, that sections 2 and 149 of the original act are the only ones which are amended and which are set forth and published at full length ; and that neither of them has any connection with or reference to the water works, or the committee to construct them ; that no other sections of the original act are amended in terms, but remain in full force unless amended by implication ; that a number of sections are added to the original act not amendatory of any particular section of it, but merely supplementary thereto ; that the added sections do materially amend by implication other provisions of it: and they refer as an example to section 143 of the original act, which provides that : " The city of Portland is not bound by any contract, or in any way liable thereon, unless the same is authorized by the city ordinance and made in writing, and by order of the council, signed by the auditor or some other person in behalf of the city," etc. This in particular, they claim, has been amended, or is attempted to be amended, by the act in question, without being set forth and published as required by said section 22 of article 4 of the constitution, and in violation thereof.

It is undoubtedly true that a section of a statute of this state cannot in terms be amended by a mere reference to the title of the act containing it. The provision of the constitution referred to is decisive upon that point. But that a subsequent statute cannot be enacted affecting the provisions of a prior one, with-

out setting forth and publishing the prior provisions as amended, does not follow.    (*People* v. *Mahaney*, 13 Mich. 481, 496.)

By the title of the act in question, it purports to be an amendment of the original act to which it refers, and the act itself does not in terms amend the two sections which have been referred to, and which are set forth and published there at full length; but does it amend said section 143 of the original act? This I very much doubt.    By that section the city of Portland is not bound by any contract, or in any way liable thereon, unless the same is authorized by a city ordinance, and made in writing, etc.    The amended act undertakes to make the city liable upon bonds to be issued in its name by the committee.    This would seemingly change the former provision; but does it do so in fact?    The contract referred to in said section 143 must have been such a one as a city ordinance could properly authorize— a contract which the city was empowered to enter into.    The amended act introduced another subject in the city affairs, one which the city theretofore had no control over.    It could not contract for the construction of water works.    No such contract could have been authorized by a city ordinance.    The said section had no reference to any such contracts as could be made under existing laws, and it retains the same right and enjoys the same immunity since the adoption of the said amendment it had before.    I cannot see that said section has been amended or in any wise affected further than this.    The city may now become liable upon a contract not authorized by an ordinance of the common council; but not upon any contract that can now or could have been then authorized by any ordinance which that body could adopt.    It is unshorn of any power it then possessed.

In *Dolan* v. *Bernard*, 5 Oregon, 390, cited by the respondents' counsel, the provisions of the former statute were attempted to be amended by a subsequent one in a material particular.    Those of the former provided the time when an assessor should enter upon the discharge of his official duties, and the subsequent one changed it to a different time.    This the court held to have been an amendment; but here there has

been no change at all, if we read the two provisions in accordance with the construction courts are compelled to give them. If said section 143 is read according to its meaning, as before indicated, it will be found not to have been altered or changed in the least by the subsequent act. It was claimed by one of the respondents' counsel, upon the argument, that the original act should have been set forth and published at full length, as amended by the addition of the new sections. Such would have been the case if the former act had been revised; but the amendment, as it is termed, is in the nature of a supplemental act, and its object and purpose is clearly indicated by the heading "to amend the act entitled ' an act to incorporate the city of Portland' approved October 24, 1882," by adding thereto certain sections to be numbered and constitute chapter 13 of said act, and entitled " Water Works." It was no covert legislation, such as the constitutional provision was intended to prevent. No attempt is shown to smuggle into the original act provisions whose object and meaning are obscure; but the whole purpose of it is fully disclosed, and the average legislator could not have been misled by an inspection of it. The objection to the act upon this ground cannot be sustained.

The next objection, that the members of the "water committee" are officers of the city, and are not required to take an oath of office, the respondents' counsel attempted to sustain by section 3 of article 15 of the constitution, which provides as follows:

" SEC. 3. Every person elected or appointed to any office under the constitution shall, before entering upon the duties thereof, take an oath or affirmation to support the constitution of the United States and of this state, and also an oath of office."

This presents the question whether or not the members of the committee are officers under the constitution. They are named and their duties are prescribed in the act, which duty, as we have seen, was to construct the water works. The object of the act was to supply the city of Portland with water. In order to carry it out, it was necessary to establish water

works, and the gentlemen named were designated as a committee for that purpose; that they are officers, in the broad sense of the term, there can be no question ; but whether they are such officers as were intended by the said section of the constitution is very doubtful. In order to be such officers they must have been elected or appointed to an office under the constitution, which I understand to be, an office provided for by that instrument.

In the case of *McArthur, &c.,* v. *Nelson,* 81 Ky. 67, cited by the appellant's counsel, a district styled the "court house district" had been created by the legislature of that state, with a view of imposing a tax upon the people within the prescribed boundary, sufficient to construct a new court house within the city of Newport, Campbell County, in said State. The act authorized the judge of the circuit court to appoint three commissioners of the district, who should hold their office at the will and pleasure of the judge. It was made the duty of the commissioners to have the court house constructed at a cost not exceeding $50,000; and to enable them to raise the money, they were authorized to issue bonds, to redeem them, and to levy an annual tax upon the real and personal property in the district. In determining the question as to whether such commissioners were officers or not, under the constitution of the state, the court said:

"Nor do we think it was necessary for the legislature to prescribe the term of office for the commissioners, although they are made a body corporate and politic, with power to sue and be sued, contract and be contracted with, under the style of 'Commisssioners of the Court House District.' They are not district officers within the meaning of section 10, of article 6, of the constitution; but are the mere agents of the district, required by the act to discharge certain duties with reference to the building of the court house, and when those duties end, their employment terminates. It could not have been intended by the framers of the constitution, that commissioners appointed to superintend and control the erection of state or county buildings, and to receive and collect the taxes from

XIV. OREG.—8.

the sheriff imposed by the act itself, should be regarded as district officers, coming within that provision of the constitution forbidding the creation of any office, the term of which shall be for a longer time than a term of years   *   *   *   To hold that such commissioners are to be selected, and when selected to be removed as officers within the meaning of the constitution, would be determining by judicial precedent every one charged with the execution of a ministerial duty under legislative sanction an officer, whose term of office must be designated or the appointment will be held invalid."

The question involved in that case is very similar to the one here, and the language of the court expresses the view we entertain regarding it—that the members of the water committee are no more than agents of the city, required by the act to carry out its provisions, as was said in that case regarding the commissioners to build the court house.

It might be said that the act need not require the members of the committee to take an oath of office, and still be valid, even if they came under the denomination of officers under the constitution, as the clause upon that subject is a law that executes itself, and requires no enabling act for that purpose ; but we prefer to place the decision of the point upon the merits of the question presented.

The next objection for consideration, as we have arranged the several objections against the validity of the act, is, whether the water commissioners, as they are styled in it, and collectively termed the water commission, are officers whose term of office is required to be limited by the clause of the constitution contained in section 2 of article 15 before referred to.

Section 154 of the act is set out in full herein, and it would seem from an inspection of it, that whenever the water works are ready for use, five persons shall be selected as provided in another part of the act, and thereafter the power and authority given to the city to keep, conduct and maintain the water works, devolve upon this commission.   The commissioners are to be selected in the first instance from the old committee for the term of two, four, six, eight and ten years, if a sufficient

number of the committee will consent to serve as such commissioners; if not, the remainder must be selected from the resident tax payers of the city. Thereafter the commissioners are to be appointed by the governor of the state, to fill vacancies for parts of terms and for full terms, which are made ten years. This commission is to have full charge of the water works. Each commissioner is to receive, on account of his services under the act, $500 a year; is not eligible unless he has paid within a year before his selection a tax of not less than $25; and whenever he shall thereafter fail to pay such tax to the city for one year, he shall cease to be a member of the commission, and his place be deemed vacant. The following sections of the act contain the main provisions relating to the powers and duties of the commission:

"Sec. 158. All money collected or received by the commission for the use and consumption of water, or otherwise, shall be deposited with the treasurer of the city, who shall keep the same separate and apart from the other funds of the city, and pay it out on the order of the chairman of the commission, countersigned by the clerk thereof, to the holder of any overdue interest coupons of the bonds aforesaid, upon the presentation and surrender thereof, and not otherwise.

"Sec. 159. The commission has power and authority: (1) To employ, hire, and discharge, from time to time, all such agents, workmen, laborers and servants as it may deem necessary or convenient in the conduct and management of said water works. (2) To make all needful rules and regulations for the conduct and management of the same by the city and the inhabitants thereof. (3) To establish rates for the use and consumption of water by the city and the inhabitants thereof, including the people living along the line, or in the vicinity of the works without the city. (4) To provide for the payment of water rates monthly, in advance, and to shut off the water from any house, tenement or place for which the water rate is not duly paid, or when any rule or regulation is disregarded or disobeyed. (5) To do any other act, or make any other regulation, necessary and convenient for the conduct of its

business, and the due execution of the powers and authority given it by the act, and not contrary to law.

"SEC. 160. The commission shall annually, before the first day of January, make a written estimate of the probable expense of maintaining and conducting the water works during the ensuing year, and also the cost of any contemplated alteration, improvement or extension thereof; and thereupon ascertain and prescribe, as near as it conveniently can, a water rate for such year as will insure a sufficient income from the sale of the water to pay the expenses and costs, together with one year's interest on the bonds aforesaid, then issued and outstanding.

"SEC. 161. After the expiration of five years from the selection of the commission, a sum equal to one per centum on the par value of the bonds, aforesaid, then issued and outstanding, may be annually estimated for, in fixing the water rate, in addition to the expenses, cost and interest aforesaid, and collected as a part thereof; which sum, when so collected, shall be kept and invested under the direction of the commission as a sinking fund, for the payment and redemption of said bonds.

"SEC. 162. The committee and commission shall each cause a quarterly statement, in detail, of its receipts and disbursements to be made and signed by its chairman and clerk, and filed by the city auditor and clerk, who shall preserve the same among the files of his office, and shall cause the same to be published in two daily papers of the city; and the commission shall cause to be made, filed and published, as a part of its last quarterly report in each year, an inventory or statement of the property, implements and material in its possession and control pertaining to the water works, together with the condition and approximate value thereof."

There is much more reason for holding that the commissioners are officers within the meaning of the constitution, than that the members of the water company are; and besides, the words "elected or appointed to any office under the constitution," do not occur in said section 2 of article 15. The lan-

guage there, as already shown, is simply "that the legislative assembly should not create any office, the term of which should be longer than four years"; but still I cannot persuade myself to believe that they are such officers as said clause refers to, or that they will be any more than agents for the city under the act, the same as the members of the water committee are. This objection to the act would not, if it were to prevail, materially affect its validity. The said commissioners will not, in all human probability, be selected for a long time, and the main object of the act can be accomplished without carrying out that portion of it.

Our attention has been called to sections 6 and 7 of article 8 of the constitution, relating to the manner of selecting county, township, precinct, and city officers. Their provisions would have an important bearing, no doubt, if the commissioners were necessarily officers belonging to either class. We agree with the respondent's counsel, that "in the election of officers to administer the affairs of a municipal corporation which is of a purely local character, in which the state has no interest, the legislature has no authority either to elect or appoint such officers." The constitution has pointed out the mode of their selection, and it must be followed, except, perhaps, where, as a temporary expedient, it designates persons to administer those affairs until an arrangement of the municipal government can be effected. At least, it has frequently pursued that course, and I discover no impropriety in it. There is, however, left in the legislature a supervisory power over municipal corporations, regarding certain matters, and which in the absence of constitutional directions, may be exercised in accordance with legislative discretion; as was remarked by the Supreme Court of the United States, in *Barbier* v. *Connolly*, 113 U. S. 31, in speaking of the effect of the fourteenth amendment of the Constitution of the United States: "But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, educa-

tion and good order of the people, and to legislate so as to in-
crease the industries of the state, develop its resources, and
add to its wealth and prosperity.   From the very necessities
of society, legislation of a special character having these ob-
jects in view must often be had in certain districts, such as the
draining marshes and irrigating arid plains.   Special burdens
are often necessary for general benefits—for supplying water,
preventing fires, lighting districts, clearing streets, opening
parks, and many other objects." ·

The respondent's counsel concede that the power here re-
ferred to resides in the legislature, and have set forth in their
brief the doctrine in apt and appropriate language, which I
here quote : " It is to be understood, however, that the right
of the qualified electors of a municipal corporation to choose
their own officers is confined to those who administer the local
affairs of the municipality, and the legislature has the unques-
tioned power, if it deems fit, to appoint officers within a mu-
nicipal corporation, to execute and administer laws of a public
nature in which the people at large are interested, such as the
preservation of the public peace, police regulations, and the
like.   In these·the power of the legislature is plenary and un-
doubted."

I do not see that the opposing counsel differ, or can differ,
in their respective premises.   Their disagreement is narrowed
to the point as to whether the object of the act relates to a
private affair, or is for a public purpose.   Upon that, however,
their views diverge very widely ; but I shall defer the further
discussion of that question until I reach the last objection
against the validity of the act, as whatever else is said in re-
gard to this objection applies equally to that.

The objection that the subject of the act is not expressed
in the title, in accordance with section 20 of article 4 of the
constitution, which provides that every act shall embrace but
one subject, and matters properly connected therewith, which
subject shall be expressed in the title, is not maintainable un-
less there is a clear defect in that particular.   It is sufficient
if the subject be stated generally.   It is not necessary that the

title specify the object in all its particulars.    The provision of the constitution was adopted to prevent the blending of incongruous subjects in the same act, and using the title as a deception.    "There has been a general disposition to construe this provision of the constitution liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it has been adopted."    (Cooley's Const. Lim. * 146.)

*Neuendorff* v. *Duryea et al.*, 69 N. Y. 557, illustrates the liberality in which such provisions of the constitution have been construed.    In that case a similar objection was made to a private act of the legislature of that state.    The title of the act was, "An act to preserve the public peace and order on the first day of the week, commonly called Sunday."    The court of appeals held that this was a sufficient title, under a similar clause of the constitution to the one in question, to an act forbidding operatic and dramatic performances in the city of New York on Sunday.    The court said that the title was broad enough to indicate legislation in regard to the public peace and order on Sunday throughout the state.    Hence it gave information to the people in New York city, and to their representatives in the legislature, that that locality was interested in the proposed enactment.

In *Brandon* v. *The State*, 16 Ind. 197, it was held by the Supreme Court of the State, that, " if the title of an original act was sufficient to embrace the provisions contained in an act amendatory thereof, it need not be inquired whether the title of the amendatory act would of itself be sufficient."    That ruling was in accordance with former rulings of the Supreme Court of that state, all of which were upon a provision of the constitution of Indiana, from which the one under consideration was taken.

The title of the act in question is helped materially by the matter immediately following the enacting clause, which shows very clearly what the object of the act was.    It certainly embraced but one subject, and I think the title was broad enough to indicate the general object of the act, and that, within the great majority of the authorities, is sufficient.

The objection that the legislative assembly had no power to authorize the water committee to issue the bonds in the name of the city, and make it liable for their payment, is, to my mind, the most serious one that is made against the validity of the act. And this brings me back to the former objection again. The power of the legislature over municipal corporations, in the absence of constitutional restrictions, is unlimited, except so far as they are endowed with rights incident to a private corporation, which, according to Mr. Dillon, only extends to the private advantage of the particular corporation as a distinct legal personality, and to property acquired thereunder, and to contracts made in reference thereto. (Dill. Mun. Corp., 3d ed., Sec. 66.) And that author, in section 67, same work, says in effect, that that description is unsatisfactory, and the private character thus ascribed to those corporations is difficult to comprehend ; and he inquires in what sense powers conferred and to be exercised for the good of all the people of the place are private, and wherein they differ in their origin and nature from those admitted to the public ; and concludes that the distinction between the two classes originated in the courts, to promote justice and to escape technical difficulties, in order to hold such corporations liable to private actions. The Supreme Court of Michigan, however, in the case of *People* v. *Hurlbut*, 24 Mich. 44, cited by the respondent's counsel in support of their position, undertook to distinguish between powers not municipal and those which were, and classed " boards of police commissioners " as coming under the former head, and " water commissioners," and " sewer committees for a particular city," as coming under the latter head, and held that the legislature of that state, while it might appoint the former, had no power to divest the city authorities of a particular city of the power to establish water works and construct sewers, and confer it upon persons of its own designation. This decision was made under a construction which the court placed upon the constitution of that state, in regard to the incorporation of cities and villages, and the election and appointment of their officers. It is entitled to great respect and consideration, but it

by no means settles the question as to what authority belongs to the local affairs of a city, and what is of a public nature ; nor does it necessarily follow that this court should construe provisions of the constitution of this state the same as the court construed a similar provision of the constitution of that state. The past history of the state, and the circumstances attending the adoption of a constitutional provision, may have much to do with the construction courts give it.

Besides, the legislative assembly of this state has not attempted by this act to usurp any powers possessed by the city of Portland at the time of its adoption. It has simply undertaken to supply its population of more than thirty thousand inhabitants with pure water, at reasonable rates, from a point beyond the city limits, and to accomplish it in the manner pointed out in the act ; and if that is a matter of public interest, then the legislature had a right to appoint agents through whom it might be accomplished, unless the constitution of the state has deprived it of the authority. Counsel on both sides have cited a number of authorities as to the character of such a power. They do not differ in the main ; both concede that, primarily, municipal corporations are public, and their powers governmental ; but it is claimed upon the part of the respondents, and they have produced several authorities to show, that they are also endowed with peculiar powers and capacities for the benefit and convenience of their own citizens, and that they are of a private nature, and the state cannot interfere with them, for the reason that they are private. Thus, in *Atkins* v. *Town of Randolph*, 31 Vt. 226, it was held that an act for the appointment of an agent of the town by the county commissioner, with power to purchase liquors on the credit of the town, and to sell the same for certain specified purposes, and to account for and pay over the proceeds to the town as prescribed, was unconstitutional ; and the town not having consented to the appointment, or ratified the contract, was not liable for the liquors purchased upon its credit by such agent pursuant to the act; because, the court said, the contracts were of a private character, although they would conduce to the public good

by enabling the government to suppress traffic in intoxicating liquors.

The court was clearly correct in its conclusions if its premise were correct. If the contracts were of "a private character," the legislature could not provide that the town should enter into them against its will. In all that class of cases cited by the respondent's counsel, where the authority has been denied, the decisions have been placed upon the ground that the power attempted to be exercised related to a private affair of the corporation. This class of decisions has in some instances undertaken to draw the lines between powers which are governmental in their nature, and those which relate to local convenience for the citizen, and to place those relating to water, gas and public parks, on the *quasi* private side of the corporation; and the respondent's counsel strenuously insist that these subjects *per se* relate to private affairs. I doubt whether such is the rule. Subjects of that character might, under some aspects, be regarded as belonging to the private affairs of a corporation, but under others would be regarded .as a public matter. The legislature is often the judge in such cases. It has frequently authorized municipal corporations to take land for a public park, for water works, and for bringing water into a town. (*Brooklyn Park Com'rs* v. *Armstrong,* 45 N. Y. 234; *Kane* v. *The Mayor &c. of Baltimore,* 15 Md. 240; Dill. Mun. Corp. (3d. ed.), Sec. 599; *Inhabitants of Wayland* v. *County Com'rs of Middlesex,* 4 Gray, 500.)

The court, in *Attorney General* v. *The City of Eau Claire et al.,* 37 Wis. 435, held that providing for the erection of water works is so essentially a public and municipal purpose, that it is obvious that the city can take any legitimate power in aid of it. Dillon, Sec. 697, *supra,* says that the exercise of the right of eminent domain for the purpose of supplying the inhabitants of towns with pure water is clearly a public use; and in *Wayland* v. *Com'rs, supra,* where land was taken to supply the city of Boston with pure water, the court said: "The petitioners, to take the case out of the rule, contending that in this case the appropriation of property cannot be held to be for

public use ; its benefits being confined to one city alone and not shared by the whole public.  This objection, it is obvious, goes deeper than to the mere question of taxation—to the validity of the act itself.  For it can only be on the ground that this land was taken for public use, that the exercise of the right of eminent domain by the government can be justified.  But we think it is too narrow a view of the object and purposes of the act.  Many public works would perhaps be found to be peculiarly beneficial to the city or town in which they are located, though the benefits are not restricted and confined to such town or city.  In the present case the benefits are shared by a larger portion of the public directly, and indirectly by the whole commonwealth.  It would be difficult, we think, to find any class of cases in which the right of eminent domain is more justly or wisely exercised, than in provisions to supply our crowded towns and cities with pure water—provisions equally necessary to the health and safety of the people.  It is, perhaps, scarcely necessary to remark, that it is for the legislature, in the first instance, to determine what may be regarded as a public use, and that it is only in a clear case of departure from the rule that this court would feel justified in determining such an act to be invalid."

In *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, the Supreme Court of the United States held that a legislative grant of an exclusive right to supply gas to a municipality and its inhabitants through pipes, &c., upon condition of performance of service by the grantee, was a grant of a franchise vested in the state ; that it was a business of a public nature, and meets a public necessity.

Public parks, gas, water and sewage in towns and cities may ordinarily be classed as private affairs, but they often become matters of public importance ; and when the legislature determines that there is a public necessity for their use in a certain locality, I do not think they can be designated as mere private affairs.  That is a relative question.  Take the case at bar.  The city of Portland needs a supply of water.  It has to be brought from some place outside of the city.  The

matter is presented to the legislature, and it determines that it is a matter of public necessity; that steps should be taken to insure to the city wholesome water at cheap rates ; and can it be claimed that it was a mere private affair, and the legislature had no authority to interfere with it ?

It seems to me that this act bears upon its face ample proof that its object and design were to promote the public good, and that it is the exercise of a power that is governmental in its nature ; nor do I discover in it any attempt or design to deprive the city of Portland of its autonomy. The city had, as I understand, no right to establish water works. The act undertakes to do that and give the city the benefit of it. It places the enterprise under the management of wealthy and prominent citizens of the town, and to remove all suspicion of a job in the affair, requires them to serve without compensation. The sole object appears to be for the benefit of the city and country at large. It is claimed upon the part of the respondents that the benefit can only be local ; that other sections of the state are not interested in it. This does not appear from the complaint, and we have the right to assume that it is not so as a matter of fact, as every intendment must be given in favor of the legality of the act. The court, I think, has a right to take judicial notice that the city of Portland is the metropolis of the state; that its commercial relations extend to every section of the state; that citizens from every part of it go there to dispose of the products of the country and to purchase supplies in return ; that the country depends upon it as a mart, and that it depends upon the country for its trade, and that the advantages are mutual; that, as it thrives and increases in population, it affords a better market and insures reductions on the price of merchandise, and in addition, contributes largely towards the revenue of the state. The latter is directly interested in its advancement. The people from every part of the state are drawn there through business or for pleasure, and it is absurd to contend that they would not be incommoded, nor the state at large injured, if the town were stinted in its supply, or furnished with a bad quality of a primary and essential element of life.

Points decided.

From any view, it seems to me that the measure which is attempted to be enforced by means of the act is a public advantage ; and we must presume that it was necessary to adopt the act in order to insure its accomplishment. It, evidently, is not a scheme to advance the interests of any private individual, but an enterprise that aims to benefit an entire community, and I must regard it as public in its character. If I am correct in this conclusion, then the legislative assembly had an undoubted right to appoint agents to enforce its provisions, and to authorize the issuance of the bonds in the name of the city. I concede that it bears a semblance of arbitrariness, and that I would have been better satisfied with it if the city had been allowed to have issued the bonds; but they appear to acquiesce in it, and, so far as we can observe, are endeavoring to maintain the act; and this court might, by intermeddling with the affair, do the city a great damage. A question has been raised as to the right of the respondents to maintain the suit, as to whether they have any standing in court. My impressions are adverse to the right; but in view of the importance of the case, we have concluded not to consider it.

The decree appealed from must be reversed, and the respondent's complaint dismissed.