[Filed March 22, 1892.]

## STATE OF OREGON EX REL. *v.* M. C. GEORGE ET AL.

CONSTITUTIONAL LAW—EXECUTIVE AND LEGISLATIVE FUNCTIONS—APPOINTMENT TO OFFICE.—The power of appointing officers does not belong exclusively to the executive branch of the government of this state, but may be exercised in some instances by the legislative assembly.

"MEUSSDORFFER ACT"—BRIDGE COMMITTEE.—The members of the bridge committee, provided for by the act of February 18, 1891, of the legislative assembly of Oregon, commonly known as the "Meussdorffer Act," are not officers within the meaning of that term as used in the constitution of this state; but are mere agents of the city of Portland for the performance of certain duties defined by the act.

DELEGATION OF LEGISLATIVE POWER—JUDICIAL FUNCTIONS.—It is not a delegation of legislative power for the legislature to authorize certain judges of the circuit court to appoint the bridge committee provided for by the "Meussdorffer Act"; neither is the exercise of this power of appointment by such judges in derogation of their duties as judicial officers.

MEMBER OF LEGISLATURE—OFFICE CREATED BY LEGISLATIVE ASSEMBLY—
ELIGIBILITY.—A person who was a member of the legislative assembly
which passed the "Meussdorffer Act," is not thereby disqualified to serve,
during the term for which he was elected, as a member of the bridge
committee created by the act, because such a position is not an office.

Multnomah county: E. D. SHATTUCK, Judge.

Plaintiff appeals. Affirmed.

This was a proceeding in the nature of a *quo warranto*
brought by the state upon the relation of D. F. Sherman, a
citizen and taxpayer, to try the title of the respondents to
hold the office of bridge committeemen, under the act of
the legislative assembly, commonly known as the Meuss-
dorffer Act.

By section 2 of said act, it is provided that the power
and authority given to the cities named in section 1 hereof,
since consolidated as the city of Portland, to construct,
purchase, hire, keep up and maintain bridges across the
Willamette river, and to issue and dispose of bonds there-
for, shall be exercised as hereinafter provided, by eight tax-
payers of Multnomah county, to be appointed by the two
judges of the circuit court for said county, who shall be
styled the bridge committee. The act then directs that
within thirty days after the time it takes effect, it shall be
the duty of said judges to appoint the committee referred
to in section 2, and to cause notice of such appointment to
be served on each person appointed. Within twenty days
after notice of their appointment, the members of the com-
mittee are directed to meet and organize by the election of
a presiding officer from their number who shall be styled
the chairman of the committee, by the selection of a clerk
who shall be styled the clerk of the committee, and the
appointment of a treasurer. The committee thus consti-
tuted is authorized to fill any vacancy that may occur in
that body by death, resignation, removal from the city of
which he is a resident, or otherwise, by appointment of a
person to be a member thereof who is a *bona fide* resident

of the city in which resided the member he is appointed to succeed. Whenever, and in the judgment of the committee, as soon as the several bridges are procured as contemplated, or the limit of the sum of money authorized to be expended has been reached, the act commands the selection of four persons, whose duty it shall be to maintain, manage and keep the bridges in repair. These shall be styled individually bridge commissioners, and collectively the bridge commission; and thereafter the power conferred upon the city by the enactment named shall be exercised by said commission in the manner explicitly provided. These commissioners are to be selected in the first instance by the committee from their own number, one each from the members who reside respectively in the cities of East Portland and Albina, and two from members who reside in the city of Portland, for the several terms of two, four, six, and eight years. In case a sufficient number do not consent to serve as such commissioners, the remainder may be selected from the resident taxpayers of the respective cities, and thereafter the commissioners shall be appointed by the said judges from such taxpayers in the following manner: If a vacancy arise otherwise than by the expiration of a term, for the remainder of the term; and in case of the expiration of a term, for the full term of eight years thereafter.

The commission is required to meet at a time and place to be appointed by the committee, and organize by the election of a chairman, treasurer, and clerk, as provided in the case of the committee. When the commission is elected and organized in accordance with the intention of the law, the committee is directed to turn over to it the bridges and all property pertaining thereto and remaining under the control of the committee. It is then made the duty of the commission to take entire possession and charge of all of the property and affairs of the committee, and thenceforward manage and conduct the same.

The two judges of the circuit court of the state of Oregon for Multnomah county, acting in pursuance of the authority conferred by the terms of said act, and within the time therein limited, duly appointed the respondents to the position of bridge committeemen, making the selection of the different individuals with reference to their places of residence and other qualifications prescribed. The committeemen met within the proper time, qualified and organized in all respects in conformity with the law. On the eighteenth day of November, 1891, John M. Pettinger resigned. The remaining seven members of the committee, at a meeting duly called, appointed as his successor T. W. Pittinger, who possessed the requisite qualifications.

After reciting these and other facts the petition then alleges, "That the defendants to this action and all and each of them, ever since their said appointment as aforesaid, and under said appointment, have acted as and claimed to be and are now acting as and claiming to be the bridge committee of said three cities, etc., as the same existed prior to said consolidation, and as the same now exists and has existed since said consolidation; and that said defendants, claiming to be said bridge committee, are about to issue, sell, and dispose of a large amount of the negotiable bonds, etc., as provided for in said free bridge act, which said bonds will be a burden upon the property of the above-named relator and the other citizens and taxpayers of the present city of Portland, and subject them to expensive litigation in order to prevent the assessment and collection of taxes upon their property for the payment of the principal and interest of such bonds," etc., concluding with a prayer for a judgment of ouster.

The defendants demurred to the petition upon the ground of the insufficiency of the facts to constitute a cause of action. The demurrer was sustained by the court below, and judgment rendered dismissing the action, from which judgment this appeal is taken.

XXII OR.—10.

*T. A. Stephens,* district attorney, and *Paxton & Paddock,* for Appellants.

A citizen of a city has such an interest in its municipal offices as will support *quo warranto* to test the right of an incumbent thereto. The relator was authorized to institute this action. (*State* v. *Hammer,* 42 N. J. L. 435; *Churchill* v. *Walker,* 68 Ga. 681; *State* v. *Jenkins,* 25 Mo. App. 484.)

The members of the bridge committee are officers within the meaning of the statute authorizing the action in the nature of *quo warranto.* This action will lie to determine whether they are entitled to the office. (*Palmer* v. *Woodbury,* 14 Cal. 44; High Ex. Rem. §§ 625, 626; *People* v. *R. & S. R. R. Co.* 30 Am. Dec. 47, note.)

Commissioners appointed by act of the legislature to lay out and build a road for the use of the public are public officers. An office is a public charge or employment, and every office is considered public the duties of which concern the public. (*People* v. *Hays,* 7 How. Pr. 248; *U. S.* v. *Hartwell,* 6 Wall. 385; *State* v. *Kennon,* 7 Ohio St. 547; *State ex rel.* v. *Valle,* 41 Mo. 29.)

The two judges of the circuit court of the state of Oregon for the county of Multnomah, no matter whether they are referred to in the Meussdorffer Act as individuals or as judicial officers, are "persons charged with official duties under" the judicial department of the government, and by the terms of this constitional provision are prohibited from exercising any of the functions of either of the other departments. (*State ex rel.* v. *Denny,* 118 Ind. 449; *State ex rel.* v. *Denny,* 118 Ind. 382; *State* v. *Simons,* 32 Minn. 540; *Houston etc. R. R. Co.* v. *Randolph,* 24 Tex. 317; *People* v. *Albertson,* 55 N. Y. 55.)

The act of appointing to office is not a judicial duty, nor is it a function pertaining to the judicial department of the government. It is an administrative function, and no matter by whom exercised, is in its nature an executive act, and ordinarily, excepting in cases where the power is

lodged elsewhere by the constitution, can be exercised by the executive department only.   (Mechem, Public Officers, §§ 104–106; *Heinlen* v. *Sullivan*, 64 Cal. 378; *State* v. *Barbour*, 53 Conn. 76; 55 Am. Rep. 65; *Taylor* v. *Comw.* 3 J. J. Marsh. 401; *People* v. *Nichols*, 68 N. C. 429; *State* v. *Tate*, 68 N. C. 546.)

Even though the legislature may exercise the power of appointment as to such state officers of general authority, it has not power to make permanent appointments to fill purely local municipal offices, nor to invest such appointees with authority to tax or impose indebtedness upon the district for which they are appointed.   (*Evansville* v. *State*, 118 Ind. 426; *People* v. *Hurlburt*, 24 Mich. 44; 9 Am. Rep. 103; *People* v. *Detroit*, 28 Mich. 228; 15 Am. Rep. 202; *People* v. *Chicago*, 51 Ill. 17; 2 Am. Rep. 278; *People* v. *Lynch*, 51 Cal. 15; 21 Am. Rep. 677; *People* v. *Albertson*, 55 N. Y. 55; *People* v. *Porter*, 90 N. Y. 68; Mechem, Public Officers, § 106.)

It is a settled maxim of constitutional law that the legislature cannot delegate the powers conferred upon it.   Matters entrusted to the judgment, wisdom and patriotism of the legislature cannot be by it delegated to other agencies.   It cannot substitute the judgment, wisdom, and patriotism of any other body for its own.   (Cooley, Const. Lim. 6 ed. 137; *Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, 15 Barb. 122; *Barto* v. *Himrod*, 8 N. Y. 483; 59 Am. Dec. 506; *Willis* v. *Owen*, 43 Tex. 41; *Brewer Brick Co.* v. *Brewer*, 62 Me. 62; 16 Am. Rep. 395; *State* v. *Hudson Co. Coms.* 37 N. J. L. 12; *Auditor* v. *Holland*, 14 Bush. 147; *State* v. *Simons*, 32 Minn. 540.)

Upon the like principle it is held that the legislative body of a municipal corporation cannot delegate to any other officer or agency the powers entrusted to it.   (*City of Oakland* v. *Carpentier*, 13 Cal. 540; *State* v. *Mayor*, 34 N. J. L. 163; *Ruggles* v. *Collier*, 43 Mo. 353; *City* v. *Clemens*, 43 Mo. 395; *Thomson* v. *Mayor*, 61 Mo. 282; *Whyte* v. *Nashville*, 2 Swan, (Tenn.) 364; *Maxwell* v. *Bay City Bridge Co.* 41 Mich. 453.)

The office is one which the legislative assembly had power to and might have filled by appointment or elec-

tion, and therefore is an office the election to which is vested in that body. Instead of exercising this power, the legislature delegated it to the judges. The legislature itself, of which he was a member, could not have appointed Mr. Meussdorffer a member of the committee. Can the power of the agent exceed that of the principal? (*State* v. *Boyd*, 21 Wis. 210; *State* v. *Valle*, 41 Mo. 29.)

*William T. Muir*, city attorney, for Respondent.

The entire law-making power of this state is committed to the legislature, except so far as it is expressly or by necessary implication limited by the constitution. (Cooley's Const. Lim. 5 ed. 106, 107; *David* v. *Portland Water Committee*, 14 Or. 98.)

The constitution broadly separates the powers of government into three branches. It does not undertake to declare what shall be considered a legislative, executive, or judicial act. The authority to appoint municipal and other officers is not given to either department. In the absence of any express declaration to the contrary, the power is merely ministerial, and the legislature may confer it in particular instances upon persons holding judicial office. (Constitution, art. 3, 1 Hill's Code, § 86; *People ex rel.* v. *Morgan*, 90 Ill. 558; Illinois Const. Art. 3, Starr & Curtis Stats., 109; Cooley's Const. Lim. 5 ed. 135; *McArthur* v. *Nelson*, 81 Ky. 67; Kentucky Const. Art. 1, §§ 1, 2, Genl. Stats. 91; *People ex rel.* v. *Solomon*, 51 Ill. 39; *Mayor* v. *State*, 15 Md. 376; 74 Am. Dec. 572; *Police Comrs.* v. *Louisville*, 3 Bush, 597; *People* v. *Pinckney*, 32 N. Y. 377; *People* v. *Batchelor*, 22 N. Y. 129; *People* v. *Woodbury*, 14 Cal. 43; Const. Cal. Art. 3, 1 Deering's Stats. 36; *State ex rel.* v. *Swift*, 11 Nev. 128; *Bridges* v. *Shallcross*, 6 W. Va. 562; *People* v. *Osborne*, 7 Colo. 605; Opinion of Justices, 138 Mass. 601.)

Our constitution allows much latitude in the matter of appointments to office, and permits the power to be exer-

cised by different branches of the governing power. (Art. 15, § 2, Hill's Code, 112; Art. 5, § 16, Id. 97.)

The legislature of the state has repeatedly exercised the appointing power in a manner similar to the method adopted in this case. (Laws Sp. Session, 1885, 97; Laws, 1887, 30; Laws, 1891, 791.)

Great weight should be given to contemporaneous construction. (Cooley's Const. Lim. 5 ed. 81, 82; *Mayor* v. *State*, 15 Md. 377; 74 Am. Dec. 572; *Biggs* v. *McBride*, 17 Or. 640.)

This interpretation of the constitution by the legislature has been upheld by this court. (*David* v. *Water Committee*, 14 Or. 98; *Biggs* v. *McBride*, 17 Or. 640; *Cook* v. *Port of Portland*, 20 Or. 580.)

The correct interpretation of article 3 of the constitution of this state is that no person employed in one department of the government shall at the same time be employed in either of the other two. (*People* v. *Provines*, 34 Cal. 520; Const. Cal. Art. 3; 1 Deering's Stat. 36.)

The position of bridge committeeman is not an office within the meaning of the constitution. He is a mere agent of the city. (*David* v. *Water Committee*, 14 Or. 99; *Barton* v. *Kalloch*, 56 Cal. 95.)

The phrase elected or appointed does not refer to municipal officers. (*Barton* v. *Kalloch*, 56 Cal. 95; *People* v. *Provines*, 34 Cal. 520; *People* v. *Henry*, 62 Cal. 557.)

Nor is the office one of profit. He serves without compensation. (Laws, 1891, 634 *et seq.*)

LORD, J.—The question presented for our determination arises upon the sufficiency of the facts to show whether or not the defendants are entitled to hold the office of bridge committee and to exercise the functions thereof. The aim of the proceeding is to test the constitutionality of the method provided by the act, (Laws, 1891, 633,) commonly known as the Meussdorffer Act, for the appointment of the bridge committee. It is insisted that the facts alleged

show that the defendants are holding the offices of bridge committee, and exercising the functions thereof without title or legal right, because the two judges of the circuit court for Multnomah county, referred to in the act, are prohibited by article 3 of the constitution from exercising the appointing power, or any function other than judicial. This proceeds upon the assumption that the act of the two judges of the circuit court in appointing the bridge committee was not a judicial duty, nor a function pertaining to the judicial department of the government. By article 3 of the constitution, the powers of the government are divided into three separate departments,—the legislative, the executive, including the administrative, and the judicial,—and any person charged with official duties under one of these departments is prohibited from exercising the functions or powers confided to either of the other departments, except as in the constitution expressly provided.

It is claimed that the two judges of the circuit court, no matter whether they are referred to in the Meussdorffer Act as individuals or judicial officers, are persons charged with official duties under the judicial department of the government, as the members of the legislature are under the legislative department, and that this constitutional provision prohibits the legislature from conferring upon such judges, and such judges from exercising, the power of appointment conferred by the act, and hence such act, and all appointments under it, are void. There can be no doubt that there are authorities to the effect that the exercise of the power of appointment to office is an executive act, and that being such the power cannot be exercised by the legislature or judiciary under a constitutional provision distributing the powers of government into three separate departments like our own. But this question, although not directly passed upon by the court in *Biggs* v. *McBride*, 17 Or. 640, nevertheless received a good deal of its attention. The point was there made that so much of the act creating the offices

of railroad commissioners as undertook to fill them by an election in joint convention of both houses of the legislature was in conflict with the constitution and void. After referring to article 3 and section 1 of article 5 of the constitution, STRAHAN, J., said: "Now, if it could be shown that the power to appoint all officers which are not expressly made elective by the people, is a part of the chief executive power of the state, the appellant's contention would be sustained, but no authority whatever has been cited to sustain this view, nor is it believed that any exists. On the contrary, the provisions of the fifth article of the constitution, which relates to the executive department, all seem at variance with this view. The framers of this instrument evidently designed that no prerogative powers should be left lurking in any of its provisions. No doubt they remembered something of the history of the conflicts with prerogatives in that country from which we inherited the common law. They, therefore, defined the powers of the chief executive of the state so clearly and distinctly that there ought to be no controversy concerning the method of filling the same, or in some cases of changing the method of filling an existing·office." After proceeding to enumerate several instances in which the power had been exercised by the legislature in making these appointments of office, which were in no way connected with the discharge of legislative duties, he concluded his opinion on this point by saying: "The power exercised by the legislature in the appointment of some of these officers is almost coëval with the constitution. The power thus exercised has never been called into question, but has been acquiesced in by every department of the government, and is in itself a contemporaneous construction of the constitution, which, if the question were doubtful, might be sufficient to turn the scale in its favor. Under any view such construction is entitled to great weight and could not be lightly regarded;

Except as limited by constitutional restrictions, it is agreed that the legislature may exercise all governmental powers. It is the law-making power of the state. "Plenary power in the legislature," said Denio, J., "for all purposes of civil government, is the rule. A prohibition to exercise a particular power is an exception." (*People* v. *Draper*, 15 N. Y. 543.) While our constitution separates the powers of government into three distinct departments, and prohibits any of them from exercising any powers confided to the other, it does not undertake to declare what shall be considered legislative, executive, or judicial acts. As Walker, J., said: "That provision declares, only in general terms, that each department of government shall be confined to the exercise of the functions of its own department. It does not undertake to define in any specific manner what are legislative, executive, or judicial powers, or acts. Like most other provisions of that instrument, the terms employed are of the most general and comprehensive character. We find no provision that declares that the appointment of a municipal officer, however extensive his powers, is the exercise of a legislative or executive power." (*People ex rel.* v *Morgan et al.* 90 Ill. 562.)

But it is argued that if it be conceded that *Biggs* v. *McBride, supra*, established the principle that the legislature, in the appointment of the railroad commissioners, had not encroached upon the executive department of the government, they were state officers, charged with official duties to be exercised for the benefit of the state at large, and appointed for a fixed term, while the members of the bridge committee, provided for by the Meussdorffer Act, are municipal officers, or a municipal board of local authority, in which the state generally has no interest and appointed for an indefinite term. Hence, it is claimed, even though the legislature may exercise the power to appoint such state officers of general authority, that it has not the power to make appointments to fill municipal offices for an indefi-

nite term.   But it seems to us the force of this contention is broken by the case of *David* v. *Portland Water Committee*, 14 Or. 98.   The duties of that board or committee in principle were like the duties of the defendant bridge committee. If the members of the water committee were not officers in the sense of the constitution, but "no more than agents of the city," as held in that case, the members of the bridge committee must likewise be agents for the city, and not officers, within the meaning of the constitution.   It would be difficult to show upon principle by a comparison of the acts wherein they differ that the members of the water committee are agents, and the members of the bridge committee officers.   That the persons named by the act as the bridge committee, were, as THAYER, J., said of the individuals designated as the water committee, "officers, in the broad sense of that term, there can be no question; but whether they were such officers as were intended by said section 3, article 15, of the constitution, is very doubtful.   In order to be such officers, they must have been elected or appointed to an office under the constitution, which I understand to be an office provided for by that instrument."   The same would be true of the bridge committee so far as this section of the constitution applies.   But the court, in *David* v. *Water Committee, supra*, based its decision upon the principle decided in *McArthur et al.* v. *Nelson*, 81 Ky. 67.   In that case, the act authorized the judge of the circuit court to appoint three commissioners of the district, who should hold their office at the will and pleasure of the judge.   It was made the duty of the commissioners to have constructed a court-house at a cost of not to exceed a sum specified; and to enable them to raise the money, they were authorized to issue bonds, to redeem them, and to levy an annual tax upon the real and personal property of the district.   In determining the question as to whether such commissioners were officers or not under the constitution, PRYOR, J., said:   "Nor do we think it was necessary

for the legislature to prescribe the term of office for the commissioners, although they are made a body corporate and politic, with power to sue and be sued, contract and be contracted with, under the style of 'Commissioners of the Court-house District.' The are not district officers within the meaning of section 10 of article 6 of the constitution, but are mere agents of the district, required by the act to discharge certain duties with reference to the building of a court-house, and when those duties end, their employment terminates. * * * To hold that such commissioners are to be selected, and when selected to be removed as officers, within the meaning of the constitution, would be determining by judicial precedent that every one charged with the execution of a ministerial duty under legislative sanction is an officer, whose term must be designated or the appointment will be held invalid."

In commenting upon that case, THAYER, J., said: "The question involved in that case is very similar to the one here, and the language of the court expresses the view we entertain regarding it,—that the members of the water committee are no more than agents of the city, required by the act to carry out its provisions, as was said in that case regarding the commissioners to build the court-house." Within the principle here decided, the vice of the argument for appellant lies in assuming that the members of the bridge committee are officers. Counsel proceed upon this hypothesis, but contend that being municipal officers of local or limited authority, their appointment by the legislature cannot be sustained; for their duties are not such as to affect the state at large, and cannot, therefore, be upheld, as in the case of the appointment of state officers to discharge duties in which the general public are interested. Moreover, if the members of the bridge committee are not officers but agents appointed to carry out the provisions of the act, the argument can have no application. In the absence of constitutional restrictions. the power of

the legislature over municipal corporations is unlimited, except so far as they are endowed with rights incident to a private corporation.  (Dillon, Mun. Corp. 3 ed § 66.)  Counsel for the appellant, recognizing the effect of these decisions upon the pending question, and the practice of our legislature, coëval with the formation of the state government to create and fill a certain class of offices, further argue that if it be admitted that the legislature had power under these decisions, (*Biggs* v. *McBride, supra,* and *David* v. *Water Committee*,) not only to create the bridge committee, but to appoint the persons constituting the same, this power cannot be delegated by the legislature to the judges of the circuit court, to be exercised by them in the appointment of the members of the committee.  It is, no doubt, true that the legislature cannot delegate the powers conferred upon it.  The general rule of law to this effect is unquestioned.  But this refers to the delegation of the law-making power.  It prohibits the delegation of authority to legislate, or to devolve upon others duties which must be performed by it as a legislative body.  Every law must be executed, if at all, by some one charged with that particular duty.  Laws special in their nature and of the kind in question, as in *David* v. *Water Committee, supra,* may be carried into effect by agents appointed for that purpose.  Within that decision nothing more or less has been done in this case.  The legislature exercised its function in enacting the law, and directing the manner of its execution.

Nor is the authority given by the act to the two judges of the circuit court to appoint the members of the bridge committee even considered as officers, without judicial precedent to sustain it, as not in conflict with section 1 of article 3 of our constitution.  In Illinois there is a like provision substantially.  (Art. 3. Ill. Const. Starr & Curtis Stats. 109.)  In *People* v. *Morgan*, 90 Ill. 558, the power of the judiciary to appoint certain officials, whose duties are not strictly judicial, or even connected with the business of

the courts, was fully recognized and sustained. A statute of that state which authorized the judge of the circuit court of Cook county to appoint assessors. and commissioners for the South Park, located in that county, was held to be constitutional. The point was expressly made, that the circuit judge could not appoint a park commissioner, on the ground that he was thereby exercising an executive or political function forbidden by the clause of the constitution referred to. The point was, however, overruled, and the power of the judge or judges to make the appointment was sustained. After giving numerous examples of official appointments made by the judges or courts, WALKER, J., said: "The executive power in a state is understood to be that power, where ever lodged, which compels the laws to be enforced and obeyed. The instrumentalities employed for that purpose are officers, elected or appointed, who are charged with the enforcement of the laws. But the power to appoint is by no means an executive function unless made so by the organic law or legislative enactment; and in this case it is not so unless the power is thus conferred. If it were conceded that these appointments were the exercise of political power, would it necessarily be violative of any provision of the constitution? The division and allotment of powers are not into political, executive, and judicial, but into legislative, executive, and judicial. It was no doubt the exercise of political power, as that embraces all governmental powers and functions, whether exercised by one department or another or the officers of one or the other. Political power is the policy of government or its administration, and may be exercised either in the formation or administration of government, or both. Hence it follows, that if it be a political power, that of itself in no wise militates against its exercise by a person belonging to the judicial department of the government. * * * All three departments aid in the administration of government, but perform different func-

tions.    The elector who votes for an officer or measure, exercises political power; yet no one would claim that because a judge was a person belonging to the judicial department, he was prohibited from thus voting.   We, therefore, conclude that if the power to appoint to office is a political function, this article of the constitution does not prohibit its exercise because the power is political; and if prohibited, it must be for some other reason, or by some other provision which, in terms, or by necessary implication, prohibits such an exercise of the appointing power."    And again he says: "But this is not a question as to what department these officers belong, or the functions they perform, but the question is, what department, in the absence of an election, can constitutionally confer the power on them to perform public duties.   It is not whether the general assembly, the executive, or the judiciary are the best qualified to select and appoint such officers, but where is the power to do so lodged?   The original power to fill all offices rests with the people, but our constitution has vested the power in the governor to fill all constitutional offices not provided for by election or otherwise."

In *People ex rel.* v. *Hoffman et al.* 116 Ill. 587; 56 Am. Rep. 793, it was held that section 1, article 2, of the election law of 1885 for cities, etc., which provides for the creation of a board of election commissioners, consisting of three members, and directs that they be appointed by the county court, is not violative of that provision of the constitution dividing the powers of government into three departments, and prohibiting any one of such departments from exercising powers properly belonging to either of the others.   It was there urged that the appointment of the commissioners could not be conferred upon the county court, because such appointment involves an exercise of political power, while the functions of the county court are exclusively judicial. But MAGRUDER, J., said: "The reasoning in *People* v. *Morgan* shows that it was never intended to vest in the

governor the selection of such local and municipal officers as these commissioners. The power to appoint officers of this class is not specifically designated in the constitution as either a legislative, judicial, or executive power. It is not therein specifically conferred on either department. Nor is there any thing therein expressed which, either directly or impliedly, prohibits the legislature from authorizing the county court to appoint the commissioners. Therefore, the authority conferred on that court to do so does not make the act invalid. The law-making powers of the states can do any legislative acts not prohibited by the state constitution."

A statute of the United States authorizes the circuit courts of the United States to appoint supervisors of elections in certain cases and under certain conditions therein specified. In *Ex parte Seibold*, 100 U. S. 371, the point was made that the United States circuit courts had not the power to appoint supervisors of election, on the ground that the duties of such courts were judicial, while the supervisors of election were officers whose duties were executive in their character. But the court held otherwise, Mr. Justice Bradley saying: "It is no doubt usual and proper to vest the appointment of inferior officers in that department of the government, executive or judicial, or in that particular executive department to which the duties of such office appertain. But there is no absolute requirement to this effect in the constitution; and if there were, it would be difficult in many cases to determine to which department an office properly belonged. Take that of marshal, for instance. He is an executive officer, whose appointment is in ordinary cases left to the president and the senate. But if congress should, as it might, vest the appointment elsewhere, it would be questionable whether it would be in the president alone, in the department of justice, or in the courts. The marshal is preëminently the officer of the courts; and in case of a vacancy congress has,

in fact, passed a law bestowing the temporary appointment of the marshal upon the justice of the circuit in which the district where the vacancy óccurs is situated."

But independent of these considerations, the power to appoint the bridge committee may be upheld on the ground that the two judges of the circuit court for Multnomah county in performing this duty act as individuals and not as judges.    This conclusion the court thought in *People ex rel.* v. *Morgan et al. supra,* might be drawn from the act authorizing the circuit judges of Cook county to appoint park commissioners; WALKER, J., in speaking for the court, saying:    "The power might, no doubt, be sustained on the ground that its exercise is the act of the individual and not the performance of an official function; that the act referring to the judge was only intended to apply to the person who filled the office at the time when the appointment was required to be made, whether it should be the same or a different person, thus being the individual act of the incumbent.    *    *    *    So that whether the appointment of these park commissioners be the exercise of a judicial, ministerial, or other function,—whether it be the act of the officer as such, or as an individual,—we are of the opinion that the power was well conferred and might be properly exercised by the circuit judge."

In view of these considerations, our decisions and those of other courts, and the power exercised by the legislature in making a certain class of appointments, almost coëval with the constitution, it is immaterial whether the appointment of the members of the bridge committee by the judges be considered the exercise of a judicial, ministerial, or other function, or it be the act of the judges as such, or as individuals, or whether the members of the committee be considered as agents of the city and not officers, the result is the same, and affirms the validity of the act granting the power.

The second question presented for our determination is whether the appointment of the defendant C. H. Meussdorffer as a member of the bridge committee is valid, he being a member of the legislature which passed the act. The contention of the appellant is that he was not eligible to be appointed a member of the bridge committee because such appointment is in conflict with section 30 of article 4 of the constitution. That provision is as follows: "No senator or representative shall, during the time for which he may have been elected, be eligible to an office, the election to which is vested in the legislative assembly," etc. Within the meaning of the constitution, as held in *David* v. *Water Committee,* under a statute of similar import, the position of bridge committeeman is not an office. He is a mere agent of the city. So that turn over this case as we may, keeping in view the well recognized rule that doubt must be solved in favor of the validity of the law, and that a law to be invalid must clearly conflict with the constitution, we must affirm the judgment.