128 355|
f148 ¹634|

## ATTORNEY GENERAL, *ex rel.* MAYBURY, *v.* BOLGER.

1. CONSTITUTIONAL LAW—TITLE TO ACT—AMENDMENT OF STATUTE.
   Any provision that might have been included in a legislative enactment under its existing title may be incorporated therein by amendment under the same title.

2. SAME—MUNICIPAL CORPORATIONS—LOCAL SELF-GOVERNMENT.
   The right of local self-government is none the less effectively preserved because certain powers are vested in the common council rather than in the mayor.

3. SAME—APPOINTMENTS TO OFFICE—NATURE OF POWER.
   The power of appointment to office is not essentially an executive function, and, in the absence of constitutional restriction,

may be vested in departments of government other than the
executive.

4. SAME—DIVISION OF GOVERNMENTAL POWERS.

Neither section 1, art. 4, of the Constitution, vesting the legisla-
tive power in a senate and house of representatives, nor any
other constitutional provision, operates to prevent the legis-
lature from conferring on the common council of a city the
power to appoint administrative officers; and such has long
been the practice.

5. SAME—DETROIT CHARTER PROVISIONS.

The contention that the power of appointment of administra-
tive officers in the city of Detroit was vested exclusively in
the mayor at the time of the adoption of the Constitution,
and is therefore beyond legislative interference, is not sus-
tained by the facts.

6. SAME—TITLE TO STATUTE—LOCAL SELF-GOVERNMENT—APPOINT-
MENTS TO OFFICE — DETROIT PARK AND BOULEVARD COMMIS-
SIONER.

Therefore: Act No. 417, Local Acts 1901, entitled "An act to
amend" certain sections of an act entitled "An act supple-
mental to the charter of the city of Detroit, and relating to
parks, boulevards, and other public grounds in said city,"
etc., which abolished the board of commissioners of parks
and boulevards, appointed by the mayor with the approval of
the common council, and provided for a single commissioner,
to be appointed by the council, is not unconstitutional (1)
because of an insufficient title, (2) as an invasion of the right
of local self-government, or (3) as vesting executive power
in a legislative body.

Quo warranto proceedings by Horace M. Oren, attor-
ney general, on the relation of William C. Maybury and
others, to determine the right of Robert E. Bolger to hold
the office of commissioner of parks and boulevards of the
city of Detroit. Submitted September 24, 1901. Judg-
ment for respondent October 1, 1901.

Jasper C. Gates (Alfred Russell, of counsel), for
relators.

John J. Speed and Robert T. Speed (Fred A. Baker
and John W. Beaumont, of counsel), for respondent.

LONG, J.   This proceeding is brought in this court by
the attorney general by information in the nature of *quo
warranto* on the relation of William C. Maybury, mayor
of Detroit, and others, to oust the respondent from the
office of commissioner of parks and boulevards of the city
of Detroit.

Prior to 1901 there existed in the city of Detroit a board
of commissioners of parks and boulevards, consisting of
four persons nominated by the mayor and approved by
the common council.   The legislature in 1901 abolished
this board, and provided for a single commissioner, to be
appointed by the common council.   Act No. 417, Local
Acts 1901.   It is claimed by counsel for relators that the
body of the act of 1901 provides for radical changes not
mentioned in the title, thus rendering the act void under
the provisions of section 20, art. 4, of the Constitution of
this State, which provides that "no law shall embrace
more than one object, which shall be expressed in its
title."

The title of the act is:

"An act to amend sections one, two, three, four," etc.,
"of an act entitled 'An act supplemental to the charter
of the city of Detroit, and relating to parks, boulevards,
and other public grounds in said city, and to repeal act
number three hundred and seventy-four of the local acts
of eighteen hundred and seventy-nine, entitled "An act
to provide for the establishment and maintenance of a
broad street or boulevard about the limits of the city of
Detroit," ' " etc.

The act fixes the term of the office of the commissioner
at four years.   It also provides that at the end of that
term, or in case of a vacancy, the mayor shall appoint.
We find nothing in the act that might not have been in-
corporated in the original act.   The power granted to the
council under the new act is fairly within the title of the
act amended.   The act giving the council the power to
appoint the commissioner of parks and boulevards has a
natural connection with, and is not foreign to the act
amended, "relating to parks. boulevards, and other pub-

lic grounds in said city." It was said in *Holden v. Osceola Co. Sup'rs*, 77 Mich. 204 (43 N. W. 970):

"Most of the great changes in our city organizations have come in under laws which did no more than to indicate by their titles a purpose to incorporate, or reincorporate, or revise the corporate charter of the municipality dealt with. Anything which is meant to form a permanent element in municipal arrangements is pertinent to the incorporation."

It was held in *City of Detroit* v. *Wayne Circuit Judge*, 112 Mich. 319 (70 N. W. 894), that "it is competent to introduce by amendment anything which might have been introduced in the original act;" and the same rule was also laid down in *Fort Street Union Depot Co.* v. *Commissioner of Railroads*, 118 Mich. 340 (76 N. W. 631). The contention made cannot be sustained.

It is contended by relators:

"That the city of Detroit enjoys the right of local self-government by means of a mayor, vested with the executive power of nomination of all city officers other than ministerial, and by means of a council, vested with legislative powers, but not with the power of appointment of city officers other than ministerial; that the city of Detroit enjoyed this right of local self-government, with this division of powers, at and before the time of the adoption of the Constitution of 1850, which instrument recognizes and confirms this right, and was adopted subject to that right; so that the legislative power of the State cannot be exercised to take away that right, and to take away from the mayor any part of the executive power, and bestow it upon the council; that, consequently, the act under which the respondent claims title to his office by appointment of the council is not of constitutional validity."

The legislature has not attempted by the act to deprive the citizens of Detroit of their right to local self-government. The members of the common council of the city, as much as the mayor, are the immediate representatives of the citizens. They are elected by the direct vote of the people, and represent the people, and are in as close touch with the people as is the mayor; and since the citizens of

any community cannot perform any function of government in a collective capacity, and can act only through their agents, it would seem impossible to confer the power to act upon any municipal agents more nearly representative than the common council.   It was said by Mr. Justice CAMPBELL in *Board of Park Com'rs of Detroit* v. *Common Council of Detroit*, 28 Mich. 228 (15 Am. Rep. 202):

" A city is, and must be, as I conceive, a unit for purposes of government; and all bodies employed in the service of the municipality, and not directly representing the freemen, must act as agencies subordinate to the council."

But counsel for relators contend that the common council of Detroit is a legislative body, and cannot constitutionally be vested with the power to appoint an administrative officer; that the power to appoint to office is an executive function, and can be exercised only by the mayor.   That question was discussed in *People* v. *Hurlbut*, 24 Mich. 44 (9 Am. Rep. 103).   Mr. Justice CHRISTIANCY, speaking for the court, said:

"As to this mode of appointment being the exercise of a power essentially executive in its nature, it is sufficient to say that executive power cannot always be defined by any fixed standard in the abstract.  What would come within the executive power in our form of government would fall within the legislative in another, and *vice versa*. The question here is whether, under our Constitution, it is executive or legislative; and, as the Constitution has not confided the appointment of these or the like officers to the executive authorities, and has left it to the legislative discretion whether to create such offices, and how they shall be filled, it cannot be truly said that such an appointment is any more in the nature of the exercise of an executive than of a legislative power."

It has been repeatedly held in other States that the power of appointment to office is not essentially an executive function, and may, therefore, in the absence of constitutional restriction, be vested in departments other than the executive. *State* v. *Swift*, 11 Nev. 128; *People* v.

*Morgan*, 90 Ill. 558; *People* v. *Freeman*, 80 Cal. 233 (22 Pac. 173, 13 Am. St. Rep. 122); *People* v. *Langdon*, 8 Cal. 16; *Mayor, etc., of Baltimore* v. *State*, 15 Md. 376, 455, 456 (74 Am. Dec. 572); *Fox* v. *McDonald*, 101 Ala. 51 (13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98); *People* v. *Woodruff*, 32 N. Y. 355, 356; *Biggs* v. *McBride*, 17 Or. 640, 648 (21 Pac. 878, 5 L. R. A. 115); *State* v. *George*, 22 Or. 142, 151 (29 Pac. 356, 16 L. R. A. 737, 29 Am. St. Rep. 586); *People* v. *Hoffman*, 116 Ill. 587, 601 (5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793); *State* v. *Boucher*, 3 N. Dak. 389 (56 N. W. 142, 21 L. R. A. 539). These cases support the rule laid down by Mr. Justice CHRISTIANCY in the *Hurlbut Case*.

The legislature of this State has many times conferred upon the common council of Detroit the absolute right to appoint administrative officers independently of any action of the mayor. The act creating the board of water commissioners, passed in 1853, vested in the common council the authority to appoint members of the board. Act No. 90, Laws 1853. At this time the mayor was a member of the common council, but in 1857 he ceased to be a member. Notwithstanding this, the appointment of the members of the water commission was still retained in the hands of the common council, and the mayor had no voice in the appointment. Act No. 55, Laws 1857, chap. 2, § 3. This was the condition of the city charter up to 1880. Charter 1880, § 77. In 1881 an act was passed for the express purpose of giving the mayor the right to nominate the members of the water commission. Act No. 418, Local Acts 1881. It also appears that, under the city charter of 1857, the common council was authorized to appoint a city controller. Act No. 55, Laws 1857, chap. 2, § 2. At this time the mayor was not a member of the council. Id. chap. 5, § 1. The common council continued to appoint the city controller by resolution, and independently of the right of the mayor to nominate, up to 1880. In 1881 an act was passed giving the mayor the right to nominate the city controller. Act No. 405, Local Acts

1881, § 2. But up to 1881 the authority to appoint the city controller and the members of the board of water commissioners was vested absolutely in the common council. The mayor had no voice in the selection of these administrative officers. The common council was also authorized to appoint one or more street commissioners and a marshal. Act No. 55, Laws 1857, chap. 2, § 2; Act No. 136, Laws 1861, § 2.

There is no provision of the Constitution which makes it imperative that the selection of these administrative officers must be confided to the executive officer of the city. The Constitution does provide, by section 14, art. 15, that "judicial officers of cities and villages shall be elected, and all other officers shall be elected or appointed, at such time and in such manner as the legislature may direct." The Constitution does not provide, however, either directly or indirectly, the manner in which city and village officers shall be appointed. *People* v. *Hurlbut*, 24 Mich. 63 (9 Am. Rep. 103). It follows that the right to appoint them is not inherent in the executive or any other branch of the city government. That question is left to the discretion of the legislature to determine which branch of the local government shall exercise the power of appointment.

Counsel for relators cite the case of *Commissioners of Parks & Boulevards of Detroit* v. *Common Council of Detroit*, 80 Mich. 663 (45 N. W. 508), as sustaining the contention that the power of appointment could not be given by the legislature to the common council. That case does not sustain such contention. There the authority had been conferred by the legislature on the park commission, and under the act could not be directly exercised by the council; but the power of the legislature to confer upon the common council appointive power was not questioned.

Section 1, art. 4, of the Constitution, provides that "the legislative power is vested in a senate and house of representatives." Counsel for relators contend that this includes the whole legislative power within the State, including

that delegated to the legislative bodies of municipal corporations; and that, as the legislature cannot exercise any but legislative powers, it can delegate only such powers to a common council, and that an act conferring administrative functions upon it would be void under the provision of the Constitution above quoted. The history of legislation in this State shows that the legislature has never so construed this provision, and any such construction would overturn most of the city charters in the State. The general act for the incorporation of cities provides: "The following officers shall be appointed by the council, viz.: A city attorney, city surveyor, engineer of fire department, and three school inspectors." 1 How. Stat. § 2427. It is true that in most cases the mayor is the presiding officer of the council, but he is allowed to vote only in case of a tie. It is also true that during a long period the mayor of Detroit was a member of the common council, but as such he was a member of the legislative body of the municipality, and was not then performing executive duties.

Mr. Justice COOLEY said in *Board of Park Com'rs of Detroit* v. *Common Council of Detroit,* 28 Mich. 228 (15 Am. Rep. 202):

"The Constitution has not pointed out the precise extent of local powers and capacities, but has left them to be determined in each case by the legislative authority of the State, from considerations of general policy, as well as those which pertain to the local benefit and local desires."

We find no provision of the Constitution which prohibits the legislature from conferring upon the common council of Detroit the power to make this appointment, and certainly the legislative construction of the Constitution from 1850 to the present time has been in favor of such power.

But it is contended by counsel for relators that the city of Detroit enjoyed the right of local self-government at the time of the adoption of the Constitution of 1850, with the division of powers vesting the mayor with the execu-

tive power of nomination of all city officers other than ministerial, and vesting the council with legislative powers, but not with the power of appointment of city officers other than ministerial; that, therefore, the mayor's power of appointment then existing must now be recognized, and the legislature cannot, by legislative enactment, take such power from him. We think there is no force in this contention. As early as 1824 the territorial legislature placed the power of appointment of administrative officers in the city of Detroit in the common council. At that time the common council consisted of the mayor, recorder, and the five aldermen of the city; and the majority of the council was given the power to make by-laws and ordinances, and was also empowered to appoint the administrative officers of the city. This power continued in the council at the time of the adoption of the Constitution of 1850. The mayor was a member of the legislative body, and in the naming of the administrative officers of the city was not acting in any executive capacity. It cannot be said that the people, in adopting the Constitution, recognized the exclusive right in the mayor of Detroit to appoint the administrative officers of the city. It would be as logical to claim that the right in 1850 to make such appointment rested in the common council, and that the legislature could not take away that right from it. That question, we think, needs no further consideration.

We are satisfied that the act is valid, and that it was the legitimate exercise of legislative discretion in taking the power of appointment from the mayor and placing it in the common council. The respondent's title to the office must be confirmed, with costs.

The other Justices concurred.