### THE JOHN McCRAKEN.

#### THE COLUMBIA.

(District Court, D. Oregon. April 30, 1906.)

#### No. 4,827.

ADMIRALTY—SUITS IN REM—VESSELS OWNED BY MUNICIPALITY.

Vessels owned by the port of Portland, which is a municipal corporation created by the law of Oregon and charged with the duty of improving and maintaining navigation in the harbor of Portland and vicinity, and which are used by it in such work, are devoted to a public use, and are not subject to seizure by the United States or any other libelant in a civil suit in rem against them in a court of admiralty to recover damages for a maritime tort.

In Admiralty. On motion to vacate warrant of arrest.

This is a proceeding, by libel in rem, preferred by the United States against the tug John McCraken and the dredge Columbia, their engines, boilers, etc., for the recovery of damages arising from a collision with the Manzanita, a lighthouse tender, the property of the United States, alleged to have been caused by the negligence of the masters of the vessels libeled. It is shown by the libel that the vessels at fault are the property of the port of Portland, and were being navigated on the Columbia river, as tug and tow, from a point one-half mile above Coffee Island, up the river on the Oregon side, and that, while being so navigated, the collision complained of occurred. Seizure was made by the marshal in pursuance of the proceeding thus instituted.

The port of Portland now moves that the warrant of arrest by authority of which the seizure was made be vacated and set aside. In support of the motion claimant shows to the court: First, that it is a municipal corporation, created and existing under certain acts of the legislative assembly of

the state of Oregon, and is and was at the time of the alleged collision the sole owner of the vessels complained against; and, second, that the claimant is charged by the state with the duty, among other things, of creating and maintaining a ship channel within the limits of the port of Portland, and in the waters of the Willamette and Columbia rivers between said port and the sea, and is actively engaged in said work; that said vessels were built and are maintained by the claimant, and were at the time of the collision being employed in the furtherance of the work referred to, by reason whereof it is alleged that said vessels are not subject to the jurisdiction of this court, nor to seizure under the process thereof.

W. C. Bristol, U. S. Atty., for libelant.
Williams, Wood & Linthicum, for claimant.

WOLVERTON, District Judge (after stating the facts). Counsel for claimant contend, broadly, as indicated by the motion, that the vessels are not subject to seizure, by reason of the fact that they are the property of a municipal corporation, necessary to the furtherance of its operations, and are being employed in the public service and for a public use. The contention challenges the jurisdiction of the court to entertain the libel under such conditions. The questions thus presented are of vital interest, and I have endeavored to give them considerate attention. The manner of raising the issues, and its sufficiency for the purpose, will be discussed later in the opinion. The port of Portland is constituted a municipal corporation by an act of the legislative assembly of the state of Oregon, with power to sue and be sued, and to improve the harbor in the Willamette river at the city of Portland, and the channel of the Willamette and Columbia rivers between said harbor and the sea. It is also given full control, so far as the state has authority thereto, over such harbor and rivers. Sections 4635–4638, B. & C. Comp. The constitutionality of the act was brought to a test in the case of Cook v. Port of Portland, 20 Or. 580, 27 Pac. 263, 13 L. R. A. 533. It is there declared in effect that the port of Portland is a municipal corporation, and that its purposes and powers are "all public, political, or governmental," and that the corporation, and the commissioners who exercise its powers, are as well the agents of the state, delegated to exercise a part of its prerogatives. "The sole object of the corporation," says Mr. Justice Bean, speaking for the court, "is to so improve the Willamette and Columbia rivers at the city of Portland and between that point and the sea as to create and maintain a ship channel of a specified depth, and for this purpose it is given full power over these rivers, so far as the state can grant the same." The corporation being organized to perform a public service or function, and the vessels being employed in its service, they must be held presumptively to have been employed for a public use. The authorities are apparently in unison upon the proposition that a vessel, being the property of a municipality devoted to public uses, and necessary for carrying on some essential operations of the government, is not liable to seizure in a suit in rem, in admiralty, for a maritime tort. The Seneca, Fed. Cas. No. 12,668; The Fidelity, Fed. Cas. No. 4,757, same case on appeal. No. 4,758; Long v. The Tampico (D. C.) 16 Fed. 491; Brickley, Administrator, v. City

of Boston (C. C.) 20 Fed. 207; The F. C. Latrobe (D. C.) 28 Fed. 377.

Says Blatchford, District Judge, in the case of The Fidelity, supra:

"The tug was, by an authorized act of the city government, devoted to public use. She was public property, and the public use to which she was devoted was a specific use. Such property, belonging to any governmental body, federal, state, or municipal, cannot be seized to satisfy an execution on a judgment. Darlington v. Mayor, etc., 31 N. Y. 193, 88 Am. Dec. 248. Nor can it be seized by process in advance, to be held as security for a judgment which may be recovered. Such action has the effect of interfering with the public officers in the discharge of their public duties, by depriving them of necessary instruments for the discharge of those duties."

In the same case, on appeal to the Circuit Court, Mr. Chief Justice Waite, sitting as Circuit Justice, says:

"It is well settled, that public property, devoted to public uses, and necessary for carrying on the operations of the government, is not subject to seizure and sale on execution. * * * It would seem to be clear, that, if the instruments of government cannot be seized to pay a debt after judgment, they cannot before."

The reasons for the rule are found tersely, but aptly, stated in Klein v. New Orleans, 99 U. S. 149, 150, 25 L. Ed. 430:

"Municipal corporations are the local agencies of the government creating them, and their powers are such as belong to sovereignty. Property and revenue necessary for the exercise of these powers become part of the machinery of government, and to permit a creditor to seize and sell them to collect his debt would be to permit him in some degree to destroy the government itself."

So also it was said, in The F. C. Latrobe, supra:

"And when, in the performance of any duty, either imposed upon or assumed by it, the municipality employs maritime instrumentalities, I think it should be held answerable under the maritime law, with those exceptions only which public policy absolutely requires. If the vessel belonging to the municipality is used by it as a necessary instrument in the exercise of some municipal function, then, as was held by the chief justice in the case of The Fidelity, public policy requires that the municipality shall not be deprived of its use."

As it respects the United States, the proposition is, broadly asserted, that no suit in rem can be maintained against the property of the government when it would be necessary to take such property out of its possession by any writ or process of the court. The Davis, 10 Wall. 15, 19 L. Ed. 875; The Siren, 7 Wall. 152, 19 L. Ed. 129; Briggs v. Light-Boats, 11 Allen (Mass.) 157. The doctrine is not directly involved here, except that it serves to indicate that by a rigid rule the government will not suffer its property to be taken from the possession of itself or its officers, through the process of the courts, without its consent; no suit or action being maintainable against the United States without authorization from Congress. The observation is relevant, however, in view of the insistence of the district attorney that, as the vessels libeled were proceeding, as alleged in the libel, in violation of the navigation laws of the United States, therefore, the laws of the general government being the paramount law of the land, the government, through its courts, could seize such

vessels and subject them to the payment of the damages sustained by the collision. The fundamental principle, as it relates to the autonomy of government between the national and state organisms, has been recently announced by Mr. Justice Brewer, in the case of the Matter of Heff, 197 U. S. 488, 505, 25 Sup. Ct. 506, 510, 49 L. Ed. 848, as follows:

"In this republic there is a dual system of government, national and state. Each within its own domain is supreme, and one of the chief functions of this court is to preserve the balance between them, protecting each in the powers it possesses and preventing any trespass thereon by the other."

Thus it appears that the national government is as careful that the functions of the state governments, and the instrumentalities by which they are exercised and controlled, shall not be impinged upon, and their powers hampered and impeded, as it is jealous that its own organism be not shorn of any of its authority or fettered in the maintenance of its supremacy. I take it, therefore, that it will not invade the rights of the state, or of any of its municipalities exercising the powers of the state, nor in any way clog the powers of local self-government, unless it be in a case where the national laws, validly enacted under the Constitution, come in conflict with the laws and ordinances of the state and its municipalities. In such latter case, the laws of the general government, it must be admitted, are supreme, and in that sense are the supreme law of the land. This is not a test, however, as it relates to the supremacy of any national law over a state law or a municipal ordinance. Nor is the proceeding criminal in its purpose, nor one to condemn the vessels complained against for any violation of law; but the ordinary one for libel between suitors; the general government being the libelant and the port of Portland the claimant or respondent; and there exists no reason, so far as I have been able to discover, why the municipality is not entitled to the same defense against the general government as it could rightfully interpose against a private suitor. Indeed, it appears to me that the policy of the general government is in consonance with this view, and that, under that policy, it is bound to accord to the municipality the same defense as if the libelant were a private suitor proceeding against the ships of such municipality. The port of Portland was exercising its powers, within the limits of its jurisdiction, according to the legislation of the state; and the vessels in question being the property of the municipality, employed in the public use and necessary to the purposes to which they were being devoted, I am led to the conclusion that the principle of law first herein announced is applicable, and that such vessels are not subject to seizure at the hands of the government, in a proceeding by libel in rem against them. There is apparently a conflict of judicial opinion as to whether a lien ever attaches, as against the government or a municipality, as it pertains to a vessel owned thereby and devoted to a public service. Mr. Justice Field, in the case of The Siren, supra, plainly says that:

"For the damages occasioned by collision of vessels at sea a claim is created against the vessel in fault, in favor of the injured party. This claim may be enforced in the admiralty by a proceeding in rem, except where the

vessel is the property of the United States. In such case the claim exists equally as if the vessel belonged to a private citizen, ·but for reasons of public policy, already stated, cannot be enforced by direct proceedings against the vessel. It stands, in that respect, like a claim against the government, incapable of enforcement without its consent, and unavailable for any purpose."

While, on the other hand, Mr. Chief Justice Waite, in the case of The Fidelity, supra, seems to be of the opinion that no such lien can exist. He says:

"It seems to me that the same principle which forbids the seizure to pay a debt, forbids the lien, which can only be enforced by a seizure."

It would appear that, if there was no claim or lien, the court would be without any jurisdiction whatever to entertain the proceeding by libel in rem; but that if, on the other hand, there was such a claim, the jurisdiction would exist, and the matter could be tried out, the parties consenting. See cases cited in The Siren. But, in any event, the property would not be subject to seizure against the objection of the government or municipality. This discussion is apropos to the suggestion of the government that the objection to the seizure could not be properly made by motion to vacate or set aside the warrant of arrest, and that it should be made by claim and answer. But if the seizure could not be maintained in any event, there appears no reason why the motion would not reach the question. The facts sufficiently appear, from the libel and the motion, by which it becomes apparent that the seizure cannot be maintained.

The motion will, therefore, be allowed, and the warrant of arrest vacated.