## THE GEORGE W. ELDER.

(District Court, D. Oregon. February 24, 1908.)

No. 4,879.

1. STATUTES—SUBJECT AND TITLE OF ACT—ACT CREATING PORT OF PORTLAND.

The statute of Oregon creating the port of Portland as a municipal corporation, as amended by Laws 1901, p. 417, authorizing such municipality to construct and maintain a dry dock, is not in violation of the state Constitution because the subject of dry docks is not expressed in the title of either act, such subject being germane to the general purposes of the act expressed in its title, nor is the amendment unconstitutional because it authorizes the levy of taxes for the construction of such dock, which is a public purpose.

2. MARITIME LIENS—ENFORCEMENT—ADMIRALTY—JURISDICTION.

Under B. & C. Comp. Or. 1901, § 5706, giving a lien on vessels for all debts due by virtue of a contract for construction, repairs, etc., a lien in the nature of a maritime lien exists against a domestic vessel of the state navigating the waters of the United States for furnishing dockage to such vessel in a dry dock at the request of the owner, which lien is enforceable in the admiralty courts of the United States.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 98.

Jurisdiction of admiralty to enforce maritime liens under state laws, see note to The Electron, 21 C. C. A. 21.]

In Admiralty. On exceptions to libel.

This is a libel in rem to recover against the steamship George W. Elder —the averments showing, in effect, that the libelant is a municipality, with power to sue and be sued, and with power, among other things, to operate a dry dock within the limits of the port of Portland; that the George W. Elder is a vessel plying the waters of the United States; that between May 29 and September 18, 1906, at the instance and request of her owner, and upon the faith and credit of the vessel, the libelant lifted the vessel upon its dry dock, and furnished "dry dockage" therefor for the period of time intervening said dates, and performed extra labor, and suffered damages, the reasonable value of which services and the amount of damage being set out; that by the statute of the state of Oregon a lien is created upon the vessel enforceable in admiralty, and that demand for payment has been made and payment refused.

Williams, Wood & Linthicum, for libelant.
Milton W. Smith, for claimants.

WOLVERTON, District Judge (after stating the facts as above). The libel is challenged by exceptions thereto upon grounds following:

First, that the act constituting the port of Portland as a municipality is unconstitutional, and especially as it respects the authority attempted to be conferred by which it is designed that the municipality shall construct and operate a dry-dock; and, second, that this court is without competent jurisdiction, for the reason that the cause is not of a character cognizable in admiralty. The constitutionality of the act incorporating the port of Portland as originally enacted has been set at rest by the judgment of the Supreme Court of the state of Oregon in the case of Cook v. Port of Portland, 20 Or. 580, 27 Pac. 263, 13 L. R. A. 533. Such judgment has been adopted by this court in The John Mc-Craken (D. C.) 145 Fed. 705, and it is not essential that the subject be again reviewed here.

But it is insisted that the amendatory act of the legislative assembly of the state of Oregon, which authorizes for the first time the erection and maintenance of a dry dock (see Gen. Laws 1901, p. 417), is unconstitutional, in so far as it relates to such authority, because the subject thereof, namely, dry docks, is not expressed in the title. It may be at once conceded that any amendment to an act which introduces a subject not included in the title of the original act or the title of the amendatory act, nor germane to the subject embraced in either of such titles, operates in contravention of article 4, § 20, Const. Or., and is therefore nugatory and void. The question here, however, is whether a subject has been introduced by the amendatory act not connected with or germane to the subject expressed in the title of the original act. The title of the act is:

"An act to establish and incorporate the port of Portland, and to provide for the improvement of the Willamette and Columbia rivers, in said port, and between said port and the sea."

The title of the amendatory act is:

"An act to revise and amend an act entitled an act," etc.

So that there is nothing added to the original title; no other subject introduced. The plain purpose of the act is to incorporate a municipality like a city is incorporated, and yet in the case of the incorporation of a city, with all of its complexity of powers conferred, the title is a very simple thing. I note, by turning to page 796 of the Special Laws of 1891, the next act following the port of Portland act, "An act to incorporate the city of Portland." This is all there appears of the title, notwithstanding the municipality is empowered, through its common council, to assess and levy taxes, to grant licenses, to prevent and remove nuisances, to appoint a harbor master, to regulate the building of wharves, to provide for the establishment of market houses, and to do the multitude of things incident to the regulation and welfare of a city and its government. All these, and other kindred matters of control and regulation, are always considered to be embraced by the one central subject—the incorporation of a city. Now, it seems perfectly natural that a municipality created for the purpose of improving and keeping open great waterways in aid of commerce should be given the authority to construct and maintain a dry dock. It is as easily germane to the subject embraced by the title, as the construction or maintenance of

wharves and docks is connected with the simple title for the incorporation of a city, or of the many and diverse other subjects of specific power conferred by the various provisions of the charter. Section 2 of the original act (Sp. Laws 1891, p. 792) purports to set forth in brief order the "object, purpose, and occupation" of the corporation, which was to improve and maintain a ship's channel of a depth of 25 feet from the cities of Portland, East Portland, and Albina to the sea; while section 2 of the amendatory act states the "object, purpose, and occupation" to be to promote the maritime shipping and commercial interests of the port of Portland. Section 3 reiterates the object and purpose as stated in section 2 of the original act.

It is urged that the additional object and purpose as set forth in section 2 of the amendatory act is the adding of another subject for legislation under the old title, and therefore demonstration that the amendatory act is unconstitutional. There is, it seems to me, a palpable vice in the premise. Section 2 of the amendatory act combines no new or distinct subject, but does suggest new matter, which is, by reasonable intendment properly connected with the principal subject, that of the incorporation of the port of Portland. It is as nearly allied to that subject as the provision for the improvement of the Willamette and Columbia rivers between the port and the sea. The central idea attending the entire act, with all of its amendments, is to establish and incorporate a port under the designation of the port of Portland. This is the real and paramount subject for legislation. The improvement of the channel of the two rivers and the promotion of maritime shipping and commercial interests of the port are incidental, and matters naturally and truly connected with the establishment and maintenance of the port, as naturally and truly so as the opening of streets, the establishment and maintenance of wharves, the providing of water and lights, the establishment of a fire and police system, and the maintenance of public parks by an incorporated city, incorporated under the simple title of "An act to incorporate the city of ———." It is a most natural thing for a port organized as such to deepen, if need be, and improve, its harbor, to remove obstructions, and deepen the channels entering such harbor, to maintain and operate dredges for the purpose, and to promote shipping and all commercial interests connected with the coming and departure of vessels laden with the products and fabrics of the home market and elsewhere. All these things are connected with and manifestly germane to the central subject. So with the objection interposed that the libelant is without power to construct and operate a dry dock. The power is plainly conferred by the very letter of the amendatory act; and it would seem clear that the construction and maintenance of a public dry dock is as nearly allied, and as directly germane, to the central subject of incorporating a port as the construction and operation of dredges for improvement of the channels of the rivers leading into the harbor, and of the harbor itself; and, being so, the objection that the amendatory act, construed with the original, embraces more than one subject is clearly untenable. The principle involved is supported by David v. Portland Water Committee, 14 Or. 98, 12 Pac. 174.

It is further insisted that the amendatory act is also void because it authorizes the levy of taxes for the erection of such dry dock, asserting that, when so levied, it is not for a public purpose. It is of manifest persuasion that a city may construct and maintain wharves for the use of the public, and it may charge tolls therefor. It could lawfully maintain a ferry across the stream adjacent to or passing through the city limits, and charge tolls, which being so the port of Portland could as consistently maintain and operate a dry dock, which is in equally as large a sense for public use and purpose, to subserve the interests of shipping. The following authorities by strong analogy attest the public character of the enterprise of constructing and operating a dry dock: Loan Association v. Topeka, 20 Wall. 655, 22 L. Ed. 455; Township of Burlington v. Beasley, 94 U. S. 310, 24 L. Ed. 161; Blair v. Cuming County, 111 U. S. 363, 4 Sup. Ct. 449, 28 L. Ed. 457.

One other point is made in this relation, which is that the board of control of the port of Portland is made appointive and self-perpetuating, rather than elective, and that, therefore, the entire act, with all the amendments, is unconstitutional and nugatory. The Oregon Supreme Court seems to have settled the question otherwise (David v. Water Committee, supra; State v. George, 22 Or. 142, 29 Pac. 356, 16 L. R. A. 737, 29 Am. St. Rep. 586; Eddy v. Kincaid, 28 Or. 537, 41 Pac. 156, 655), and I feel bound by the adjudication.

We come now to the question of the jurisdiction of a court of admiralty to take and maintain cognizance of the cause. Is the cause maritime? This depends upon whether the contract set out in the libel, implied though it is, is maritime. We are informed by the libel that at the instance and request of the owner, and upon the faith and credit of the vessel, libelant lifted the steamship George W. Elder upon its dry dock, and furnished dockage therefor for a time specified. It is previously alleged that the Elder is a vessel plying the waters of the United States. The contract, therefore, was one for the dockage of a vessel plying the waters of the United States. It does not specifically appear in the libel whether the port of Portland is the home port of the steamship Elder, or whether her home port is within the state or district of Oregon, but it seems to be conceded, and I am warranted, therefore, in treating the cause as if such were the case in fact. It is said in The J. E. Rumbell, 148 U. S. 1, 11, 13 Sup. Ct. 498, 37 L. Ed. 345, that:

"In the admiralty and maritime law of the United States, as declared and established by the decisions of this court, the following propositions are no longer doubtful:

"(1) For necessary repairs or supplies furnished to a vessel in a foreign port a lien is given by the general maritime law, following the civil law, and may be enforced in admiralty. * * *

"(2) For repairs or supplies in the home port of the vessel no lien exists, or can be enforced in admiralty, under the general law, independently of local statute. * * *

"(3) Whenever the statute of a state gives a lien, to be enforced by process in rem against the vessel, for repairs or supplies in her home port, this lien, being similar to the lien arising in a foreign port under the general law, is in the nature of a maritime lien, and therefore may be enforced in admiralty in the courts of the United States. * * *

"(4) This lien, in the nature of a maritime lien, and to be enforced by

process in the nature of admiralty process, is within the exclusive jurisdiction of the courts of the United States sitting in admiralty."

The same eminent jurist who announced these principles as settling the law in the United States—Mr. Justice Gray—in a still later case (The Glide, 167 U. S. 606, 624, 17 Sup. Ct. 930, 42 L. Ed. 296) sums up the entire jurisdiction, maritime and admiralty, under the federal Constitution, in the following language:

"A lien upon a ship for repairs or supplies, whether created by the general maritime law of the United States or by a local statute, is a jus in re a right of property in the vessel, and a maritime lien to secure the performance of a maritime contract, and therefore may be enforced by admiralty process in rem in the District Courts of the United States."

This seems to comprise the whole law upon the subject as it can have relation to the present controversy. The statute of Oregon (section 5706, B. & C. Comp. 1901) provides that:

"Every boat or vessel used in navigating the waters of this state or constructed in this state shall be liable and subject to a lien. * * * (2) For all debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel * * * to construct, repair, or launch such boat or vessel, on account of labor done or material furnished by mechanics, tradesmen, or others in the building, repairing, fitting, and furnishing, or equipping such boat or vessel, or on account of stores and supplies furnished for the use thereof, or on account of launch ways constructed for the launching of such boat or vessel. (3) For all sums due for wharfage, anchorage, or towage of such boat or vessel within this state."

A maritime contract may extend to repairs made or supplies furnished a vessel while actually employed in shipping, or, in other words, engaged in commerce.

As to the question of jurisdiction, regard is had to two factors only, which are determinative, namely, the purpose for which the craft was constructed, and the business in which it is engaged. When it is alleged that the vessel is plying the waters of the United States, which must be taken as the fact for the purpose of the exceptions, the business in which it is engaged appears to be maritime in character, and therefore the contract was with reference to a ship actually engaged in commerce. So it is that, during the repair of a vessel, it is often necessary that she be at a wharf, dock, or pier to be most conveniently and safely accessible. "The pecuniary charge in the nature of rent to which vessels are liable for the use of a dock or wharf is called wharfage or dockage, and is the subject of admiralty jurisdiction." Benedict's Admiralty (3d Ed.) § 283. The term "dry dockage" is employed by the libel, by which I presume is meant given dockage in a dry dock. The statute alluded to seems broad enough to comprise this kind of service; and, the contract being for maritime services with reference to a ship engaged in commerce, there can remain no further question that she is subject to the lien intended to be imposed by the statute, and also that this court of admiralty has jurisdiction in rem to enforce the lien.

Some question was made that, the ship being in a dry dock, the service was on land; but the contrary is true, as is held by Mr. Justice Brown in The Robert W. Parsons, 191 U. S. 17, 33, 24 Sup. Ct. 8, 48 L. Ed. 73. This case is valuable in its bearings upon other phases of the case at bar. As it pertains to the authority of the port of Port-

159 F.—64

land to charge compensation for the service of dockage, I am of the opinion that it is conferred by the general power granted under section 4636, B. & C. Comp. 1901. The court is not at this time concerned with the causes conducing to the necessity for docking the vessel. All it can know is what appears from the libel.

The exceptions will be overruled.